STATE of Indiana, Appellant–Plaintiff,

v.

Cary JOHNSON, Appellee–Defendant.

No. 49A02–9806–CR–536.

Court of Appeals of Indiana.

Aug. 9, 1999.

**1210**

Jeffrey A. Modisett, Attorney General of Indiana, Greg Ullrich, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellant.

Annette Fancher, Indianapolis, Indiana, Attorney for Appellee.

## OPINION

RUCKER, Judge

After a trial by jury Appellant–Defendant Cary Johnson was convicted of two counts of dealing in cocaine as Class A felonies[1] and two counts of possession of cocaine as Class C felonies.[2] In a post-trial order the trial court vacated the convictions and ordered a new trial based on the ineffective assistance of Johnson's trial counsel. The State of Indiana now appeals contending the trial court erred in setting aside the jury's verdict. We disagree and therefore affirm.

The record shows that Johnson was the target of two police undercover drug operations in June and September of 1995. On October 2, 1996, the State charged Johnson with two counts of possession of cocaine and two counts of dealing in cocaine. Attorney Richard Jones represented Johnson from November 14, 1997, through the trial held on January 26 and 27, 1998. During trial, the judge repeatedly interrupted the proceedings to question Jones regarding his tactics and questioning of witnesses and to admonish him to keep the focus of his examinations on the issues material to the case. The court also admonished Jones for questioning a police officer about matters that permitted the State to introduce evidence of Johnson's prior unrelated drug activity. When the State sought to admit hearsay evidence concerning prior drug-related investigations involving Johnson, the court stopped the proceedings and stated:

> I can't sit here and let a miscarriage of justice happen. Or manifested justice happen. [sic] I think that probably since you asked about prior investigations. I can not let this witness sit here and convict this man on a hearsay declaration given to him by a person who is not a witness in this case. Mr. Jones, I can not try your case for you, and I cannot give the objection to be made, but I cannot sit here and allow that to happen. So, while you have every right because the door is open, I cannot sit here and let him convict this man on the testimony of someone that we don't even know who it is and will not be testifying in this case. So, I would suggest that you move to your next question. [A]nd I would suggest that you pay attention [a]nd make objections that are proper.

R. at 339–40.

After a two-day trial, a jury convicted Johnson as charged. Twenty days thereafter Jones filed a motion for mistrial based entirely on his own ineffective representation. Jones claimed that due to his responsibilities in other cases, a lack of time for preparation, and fatigue, he was not adequately prepared for trial and made "grievous and prejudicial errors that ... rose to the level of ineffective counsel." R. at 109. The trial court denied the motion for mistrial. However, citing its responsibility to prevent manifest injustice, the trial court set aside the jury's verdict. When queried as to whether it was setting aside the verdict as a thirteenth juror, the trial court answered

---

1. Ind.Code § 35–48–4–1.

2. Ind.Code § 35–48–4–6.

"yes, I am." Supp. R. at 18. This interlocutory appeal followed.[3]

The State advances various arguments to support its contention that the trial court erred in granting a new trial. However, only one argument merits a response. According to the State, because the trial court granted a new trial as a thirteenth juror, the court was required to set forth specific findings of fact. In this case the trial court entered no such findings. Thus, the State contends, the trial court erred.

■■■ The thirteenth juror concept is found in Ind. Trial Rule 59(J)(7) under which the trial court may weigh evidence and judge witness credibility. *Jones v. State,* 697 N.E.2d 57, 59 (Ind.1998). When sitting as a thirteenth juror the trial court may order a new trial if the jury's verdict is against the weight of the evidence. *State v. McKenzie,* 576 N.E.2d 1258, 1260 (Ind.Ct.App.1991), *trans. denied; see also Thompson v. State,* 590 N.E.2d 633, 634 (Ind.Ct.App.1992) (sitting as a thirteenth juror the trial court "must determine whether in the minds of reasonable men a contrary verdict should have been reached."). When granting a new trial on grounds that the jury verdict is against the weight of the evidence the trial court is required to enter special findings of fact setting forth the "supporting and opposing evidence to each issue upon which a new trial is granted." *Moore v. State,* 273 Ind. 268, 403 N.E.2d 335, 336 (1980) (quoting Trial Rule 59(I)(7), the predecessor to Trial Rule 59(J)(7)). However, we find no Indiana authority requiring the trial court to enter special findings when it grants a new trial on grounds that do not contemplate weighing and sifting the evidence. Indeed, Indiana courts have the inherent power to grant new trials *sua sponte* and are expressly autho-

rized to do so by Ind. Trial Rule 59(B).[4] *Fisher v. Davis,* 488 N.E.2d 725, 727 (Ind.Ct. App.1986).

■■■ In the case before us, the trial court responded affirmatively when asked if it was acting as a thirteenth juror. However, the record shows otherwise. The trial court did not vacate the judgment and order a new trial based upon a finding that the verdict was against the weight of the evidence. Rather, on its own motion the trial court determined that a new trial was warranted to prevent manifest injustice. Thus, regardless of the trial court's stated rationale, we will affirm the trial court's judgment even if its reasons for a ruling are incorrect or even absent. *Taylor v. State,* 615 N.E.2d 907, 912 (Ind.Ct.App.1993). Here, the trial court correctly granted a new trial. In ruling on its own motion to correct errors the trial court declared:

> [T]he Court is entrusted with the responsibility to determine that a manifest injustice does not occur. This court certainly remembers this case. And remembers the numerous occasions wherein we talked with both counsel during the trial of this case. Fundamental right to ever[y] accused is the right to a fair trial, which in this Court's judgment, and I think according to law must, include the effective assistance of counsel. This Court, therefore, is setting aside the judgment in this case. This case will be retried.

Supp. R. at 18. The court then recused itself and ordered a new trial. The preamble to T.R. 59(J) provides in relevant part "[t]he court, if it determines that prejudicial or harmful error has been committed, shall take such action as will cure the error...." Pur-

---

**3.** Review of the record in this case was made difficult by the State's failure to prepare the record in compliance with the Indiana Rules of Appellate Procedure. Indiana's appellate rules place the burden on the appellant to prepare and file the record of proceedings. App. R. 7.2(A)(3)(a) states, "Notations shall be made on the margins of each page of the transcript of the evidence indicating the name of each witness, and whether the examination is direct, cross, or redirect." The record in this case is devoid of any marginal notations. Similarly, the table of contents fails to list the witnesses much less cite

the initial page of the witness's direct, cross, or re-direct examination as required by App. R. 7.1(C). While the State's failure to comply with the Rules of Appellate Procedure did not preclude review of this appeal, it is advised to heed the language of Ind. Appellate Rules 7.2(A)(3) and 7.1(C) in future appeals.

**4.** The rule provides "[t]he motion to correct error, if any, may be made by the trial court, or by any party."

suant to T.R. 59(J)(1) "such action" anticipates "Grant[ing] a new trial."

■■■ A trial court has wide discretion to correct errors and to grant new trials. *Gregor v. State*, 646 N.E.2d 52, 53 (Ind.Ct.App. 1994). We will reverse only for an abuse of discretion. *Id.* An abuse of discretion will be found when the trial court's action is against the logic and effect of the facts and circumstances before it and the inferences which may be drawn therefrom. *Id.* An abuse of discretion also results from a trial court's decision that is without reason or is based upon impermissible reasons or considerations. *Id.* The record before us presents ample evidence of trial counsel's deficient performance. Although the trial court does use the precise language of the Rule, it is apparent the court reached the conclusion that prejudicial or harmful error occurred during the course of trial. Accordingly, the trial court set aside the jury's verdict and ordered a new trial. The trial court did not abuse its discretion in so doing.

Judgment affirmed.

BAKER, J., concurs.

BROOK, J., concurs with opinion.

BAKER, J., concurs in concurring opinion.

BROOK, Judge, concurring

I concur wholeheartedly with the majority's reasoning and result, but I write separately to express my concern with the potentially troublesome ethical issues raised by the facts of this case.

After conducting what can be charitably described as a lackluster defense of his client, Johnson's counsel attempted to "fall on his own sword" by filing a motion for mistrial because of his own ineffective representation. The trial court, seeking to prevent a "manifest injustice," instead vacated Johnson's convictions and ordered a new trial. Having affirmed the trial court's decision, however, I fear that unscrupulous (or even well-intentioned but overburdened) counsel may feel emboldened to mount less-than-zealous defenses of their clients, secure in the knowledge that trial judges will have no alternative but to shake their heads and wag their fingers and set aside the convictions.

Nothing could be further from the truth. According to our supreme court, "The public must have confidence that when they place their trust in an attorney they will receive faithful, professional assistance. If an attorney cannot so respond, he is unfit to continue in the profession." *Matter of McCarthy*, 466 N.E.2d 442, 444 (Ind.1984). Indiana's Rules of Professional Conduct offer ample and sensible guidance to lawyers who wish to preserve the trust of both the clients they represent and the courts before which they appear.

Ind. Professional Conduct Rule 1.1 reads as follows: "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." The fourth paragraph in the following comment section states, "A lawyer may accept representation where the requisite level of competence can be achieved by reasonable preparation. This applies as well to a lawyer who is appointed as counsel for an unrepresented person."

Ind. Professional Conduct Rule 1.3 provides, "A lawyer shall act with reasonable diligence and promptness in representing a client." The corresponding comments are particularly apposite to the instant case:

> A lawyer should pursue a matter on behalf of a client despite opposition, obstruction or personal inconvenience to the lawyer, and may take whatever lawful and ethical measures are required to vindicate a client's cause or endeavor. A lawyer should act with commitment and dedication to the interests of the client and with zeal in advocacy upon the client's behalf. . . . A lawyer's workload should be controlled so that each matter can be handled adequately.

On a related note, the first comment to Ind. Professional Conduct Rule 1.16 states, "A lawyer should not accept representation in a matter unless it can be performed competently, promptly, without improper conflict of interest and to completion."

Not only are lawyers expected to conscientiously monitor their own conduct, but judges are also entrusted with the responsibility of scrutinizing their performance. Ind. Judicial Conduct Canon 3(D)(2) contains the following guidelines:

A judge who receives credible information indicating a substantial likelihood that a lawyer has committed a violation of the Rules of Professional Conduct should take appropriate action. A judge having knowledge that a lawyer has committed a violation of the Rules of Professional Conduct that raises a substantial question as to the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects shall inform the appropriate authority.

The commentary to this subsection notes that "[a]ppropriate action may include direct communication with the judge or lawyer who has committed the violation, other direct action if available, and reporting the violation to the appropriate authority or other agency or body." One of the agencies or bodies to which this comment refers is the Supreme Court Disciplinary Commission, whose investigations of misconduct claims may lead to the reprimand, suspension, or even disbarment of attorneys who fail to act in a professionally responsible manner on behalf of their clients. *See generally* Ind. Admission and Discipline Rule 23.

In addition to my concern for the right of the accused to a competent defense, I am equally mindful of the substantial human and financial resources that are expended during the course of a criminal trial. For a defense attorney to "sleepwalk" through a proceeding and afterward seek to reverse the grave consequences of his ineptitude is an unforgivable affront to his client, to the court, and to the community that is solely responsible for the means of providing "speedy and public" and ultimately fair trials to ensure the due process of law. In many jurisdictions, however, I recognize that public defenders are encumbered with such unmanageable caseloads that even the most diligent attorney could not find the time to prepare an adequate defense for each client. Whenever such indispensable resources are stretched so perilously thin, the legal community must prevail upon the community at large to provide additional funding to safeguard the right of all criminal defendants to competent legal counsel.

■ By expressing my concerns in this separate opinion, I do not wish to be seen as painting criminal defense attorneys with a broad brush as ill-prepared or indifferent to the needs of their clients; I am personally aware that the overwhelming majority of the criminal defense bar are highly trained and profoundly motivated to represent their clients to the best of their abilities. It is precisely because "clients" in criminal proceedings have entrusted the defense of their most fundamental liberties to the professional skill and personal integrity of their attorneys, however, that it is appropriate to remind the members of the criminal bar that neither the trial courts nor the supreme court of this state will allow them to abdicate their solemn duty to serve as zealous advocates of their clients' rights.