**Christopher M. HELSLEY, Appellant (Defendant below),**

v.

**STATE of Indiana, Appellee (Plaintiff below).**

No. 63S00–0303–CR–103.

Supreme Court of Indiana.

May 25, 2004.

Michael C. Keating, Keating, Bumb, Vowels, Laplante & Kent, P.C., Evansville, IN, Attorney for Appellant.

Steve Carter, Attorney General, Michael Gene Worden, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

DICKSON, Justice.

The defendant, Christopher M. Helsley, was convicted of two counts of murder for the deaths of Marsha Rainey and Brad Maxwell in Pike County, Indiana, and sentenced to life without parole. In this direct appeal, the defendant claims various errors, which we regroup as follows: (1) admission of evidence from unlawful searches of his vehicle and residence; (2) admission of cumulative and inflammatory photographs; (3) unconstitutional *ex post facto* application of the penalty statute amendment; and (4) misleading sentence modification instruction. We affirm his convictions and sentence.

## 1. Automobile and Residence Searches

The defendant first contends that the trial court erred in admitting various items of evidence resulting from unlawful

searches of his vehicle and his residence conducted pursuant to a warrant issued by the trial court. He argues that the facts upon which the warrant was issued do not establish probable cause linking him to the commission of the crime. The defendant presented his objections both at trial and in a pre-trial motion to suppress that was denied by the trial court in a comprehensive and thoughtful order.

■■■ The Fourth Amendment to the Constitution of the United States guarantees that a search warrant will not be issued without probable cause.[1] This Court recognizes that probable cause to search a premises "is established when a sufficient basis of fact exists to permit a reasonably prudent person to believe that a search of those premises will uncover evidence of a crime." Overstreet v. State, 783 N.E.2d 1140, 1157 (Ind.2003) (quoting Esquerdo v. State, 640 N.E.2d 1023, 1029 (Ind.1994)). The trial court must make its determination to issue a warrant "based on the facts stated in the affidavit and the rational and reasonable inferences drawn therefrom." Overstreet, 783 N.E.2d at 1157 (quoting Esquerdo, 640 N.E.2d at 1029).

When they sought the search warrant, police presented the following information to the trial judge: (1) about 7 a.m. on April 19, 2001, the bodies of two fellow employees of the defendant were found shot with what appeared to be a .45 caliber handgun in the Pike county EMS ambulance barn; (2) the defendant had ready access to the ambulance barn and had been there until 9:30 or 10:00 p.m. the night before; (3) the defendant had purchased a .45 caliber handgun about one year before the incident and gave conflicting statements regarding its whereabouts (he initially told investigators that he had thrown the gun away two weeks before, but later told them that he had discarded the barrel and that the remainder of the gun was in his car); (4) the defendant had a conflict with one of the victims that could adversely affect the defendant's employment; (5) the defendant's wife had seen the handgun in the defendant's pocket the day before; and (6) after the defendant returned home around midnight, the defendant's wife washed the clothes he was wearing, and the defendant was generally "acting oddly," according to his wife.

Based on these facts presented to the trial court and the rational and reasonable inferences drawn from them, there was a sufficient basis to allow a reasonable person to conclude that a search of the defendant's vehicle and his residence would uncover evidence of a crime. The search warrant was supported by adequate probable cause.[2]

## 2. Photographs

■■■ The defendant contends that the trial court abused its discretion by admitting into evidence ten photographs of the murder scene and the victims, which were cumulative because a videotape had been shown to the jury depicting the same information. He argues that he did not contest that the victims died from gunshot

1. Although the defendant generally cites to both the Fourth Amendment to the Constitution of the United States and Article 1, § 11 of the Indiana Constitution, he presents no argument that the state search and seizure provision requires a different analysis than its federal counterpart. We therefore consider only the federal claim. White v. State, 772 N.E.2d 408, 411 (Ind.2002).

2. The defendant also contends that his signed consent to the search of his vehicle was not freely and voluntarily given. Because the automobile was not searched until after the warrant was issued, however, the claim of inadequate consent is moot.

wounds, but only that he was not the perpetrator, and that any probative value of the photographs of the victims' injuries was greatly outweighed by their prejudicial effect. He also specifically urges that three autopsy photographs depicting a shaved portion of the victims' head wounds constituted altered depictions, making them even more gruesome and prejudicial.

The State responds that the photographs were relevant to the identity of the victims, the cause of death, and the manner in which the crimes were committed. Moreover, it argues that the photographs were not cumulative because they provided detail the video could not. The State also argues that because the jury viewed several photographs depicting the victims from both before and after the autopsy, it was clear in the three post-autopsy photographs with some of the victims' hair shaved (to permit better viewing of the wounds by the pathologist and the jurors) that the shaving was done by the pathologist, not the defendant.

■ The admission of photographic evidence is within the sound discretion of the trial court, and this Court reviews the admission of photographic evidence only for abuse of discretion. *Corbett v. State,* 764 N.E.2d 622, 627 (Ind.2002). Photographs, as with all relevant evidence, may only be excluded if their probative value is substantially outweighed by the danger of unfair prejudice. Ind. Evidence Rule 403; *Corbett,* 764 N.E.2d at 627. Admission of cumulative evidence alone is insufficient to warrant a new trial. *Kubsch v. State,* 784 N.E.2d 905, 923 (Ind.2003). An appellant must establish that the probative value of the evidence was outweighed by the unfair prejudice flowing from it. *Id.*

■ Moreover, "[e]ven gory and revolting photographs may be admissible as long as they are relevant to some material issue or show scenes that a witness could describe orally." *Corbett,* 764 N.E.2d at 627 (*quoting Amburgey v. State,* 696 N.E.2d 44, 45 (Ind.1998)). Gruesome and gory photographs with strong probative value are admissible where they help interpret the facts of the case for the jury. *Corbett,* 764 N.E.2d at 627. Autopsy photographs frequently pose unique problems where the pathologist has manipulated the corpse during the autopsy. They are generally inadmissible where the body is in an altered condition. *Id.* Nevertheless, "there are situations where some alteration of the body is necessary to demonstrate the testimony being given." *Swingley v. State,* 739 N.E.2d 132, 133–34 (Ind. 2000). In *Corbett,* we held that it was not prejudicial error to admit several autopsy photographs showing the victim's body with the head wounds cleaned and with some hair shaved away. 764 N.E.2d at 627.

■ Evaluating whether an exhibit's probative value is substantially outweighed by the danger of unfair prejudice is a discretionary task best performed by the trial court. *Dunlap v. State,* 761 N.E.2d 837, 842 (Ind.2002). We are not persuaded that the trial court abused its discretion in admitting the photographs.

### 3. Amendment to Penalty Statute

■ The defendant alternatively contends that either (a) the trial court's penalty phase preliminary Instruction No. 8, informing the jury that the judge must follow their recommendation, retroactively applied a statutory amendment contrary to the provisions of the constitutions of the United States and Indiana that prohibit *ex post facto* laws, or (b) the trial court's subsequent decision to consider the jury recommendation only as advisory, retaining in the trial court the power to make the final sentencing determination, but de-

nying the defense's motion for a continuance, improperly prevented the defendant from presenting mitigating evidence at the sentencing hearing before the trial court. The defendant requests a new sentencing hearing.

The defendant was convicted of murders committed on April 18, 2001. The charges were filed on April 20, 2001. The guilt phase of the trial commenced June 14, 2002, resulting in guilty verdicts on June 21, 2002. The penalty phase began and concluded on June 24, 2002, resulting in the jury's recommendation of life imprisonment without parole. On that same day, the trial court ordered the probation department to prepare and file a pre-sentence investigation report by July 12, 2002, and set sentencing for July 19, 2002. Appellant's Appendix at 18–19. At the sentencing hearing, the defendant was sentenced to life imprisonment without parole.

At the time the offenses were committed, Indiana's statute governing the imposition of life without parole and the death penalty provided that the jury would make a sentencing recommendation, but that the trial court was assigned the responsibility for determining the sentence and it was not bound by the jury's recommendation. Ind.Code § 35–50–2–9 (2001). On March 26, 2002, the legislature amended the statute "[f]or a defendant sentenced after June 30, 2002," and declared: "If the jury reaches a sentencing recommendation, the court shall sentence the defendant accordingly." Ind.Code § 35–50–2–9(e).

Thus the offenses were committed before the legislature passed the amendment and the guilt and penalty phases of the trial occurred after passage but before the effective date of the amendment. At the penalty phase six days before the effective date of the statute, however, both preliminary Instruction No. 8 and final Instruction No. 15 informed the jury that the law requires that the judge follow the jury's sentencing recommendation. Appellant's Appendix at 442, 459. The trial court's sentencing occurred three weeks later, after the effective date of the amendment. At the beginning of the sentencing hearing, the judge announced that due to "some concern about the *ex post facto* effect" of the statutory amendment, he would be treating the jury recommendation as advisory and that "this is a matter of discretion with me as to the sentence to be imposed." Transcript vol. 7, p. 60. The defendant's trial counsel immediately requested a continuance to present mitigation evidence, explaining that because of the court's jury instruction that the jury's recommendation would be binding, the defense was not prepared for the presentation of such evidence. The court denied the motion and proceeded to sentence the defendant to life imprisonment without parole, finding that the aggravating circumstance was proven beyond a reasonable doubt, finding that mitigating circumstances were present, evaluating the aggravating and mitigating factors, finding the mitigating factors were outweighed by the aggravating circumstances,[3] considering the recommendation of the jury, and expressing "the personal conclusion of this [c]ourt that the jury's sentencing recommendation is appropriate punishment for this offender and these heinous crimes." Transcript vol. 7, p. 64–66.

On June 24, 2002, when the penalty phase jury was given preliminary Instruction No. 8 and final Instruction No. 15, the 2002 penalty statute amendment had not

---

**3.** The defendant does not assert, and we therefore do not address, whether the trial court's sentencing evaluation included reliance upon aggravating circumstances not authorized by Indiana Code § 35–50–2–9(b).

yet taken effect. Arguing that its retroactive application violated the prohibition on *ex post facto* laws, the defendant contends that the instruction "incorrectly informed them of the law applicable to the case." Br. of App. at 24. But he does not assert any resulting harm from the instruction itself. If anything, the instruction increased the jury's sense of personal responsibility regarding the gravity of its decision and thus favored the defendant. *See Caldwell v. Mississippi,* 472 U.S. 320, 341, 105 S.Ct. 2633, 2646, 86 L.Ed.2d 231, 247 (1985) (recognizing the extreme importance that "a capital sentencing jury recognizes the gravity of its task and proceeds with the appropriate awareness of its 'truly awesome responsibility.' ") Thus, even if we assume *arguendo* that the instruction was erroneous either because the 2002 amendment was not yet effective on the date it was given, or because of the defendant's *ex post facto* claim, the giving of the instruction did not harm the defendant and therefore does not compel reversal.

 As to the defendant's claim that the trial court improperly denied his motion for continuance to present mitigating evidence at the trial court's sentencing proceedings, the defendant cannot prevail unless application of the 2002 amendment is found to violate the *Ex Post Facto* Clause. If there is no violation and the amendment was applicable, the trial court was obligated to impose the life without parole sentence recommended by the jury and the court's independent sentencing determination was extraneous. The actual sentencing occurred after the effective date of the statutory amendment, and the trial court was thus required, upon receiving the jury sentencing recommendation,

to "sentence the defendant accordingly," instead of engaging in the pre-amendment independent judicial sentencing evaluation and determination. Ind.Code § 35–50–2–9(e). Because the trial court stated at the time of the penalty phase jury proceedings that it was required to follow the jury's sentencing recommendation, the defendant was on notice that such jury proceedings constituted the defendant's opportunity to present evidence of mitigating circumstances. The defendant therefore suffered no harm by being precluded from presenting additional mitigating evidence to the trial judge following the return of the jury's recommendation.

Whether the denial of the defendant's continuance motion precluded his right to present mitigating evidence to the trial judge at sentencing therefore depends upon resolution of the defendant's contention that application of the amended penalty statute violated Article I, § 10 of the Constitution of the United States, which provides in part: "No State shall ... pass any ... *ex post facto* Law." [4] Citing *Kring v. Missouri,* 107 U.S. 221, 2 S.Ct. 443, 27 L.Ed. 506 (1883), the defendant argues that the 2002 amendment to the penalty statute is an *ex post facto* law because it was passed after the crimes were committed and deprived him of consideration by the trial judge for the possible imposition of a sentence less severe than that recommended by his jury consideration to which he would have entitled under the penalty statute before the 2002 amendment.

In *Kring,* the defendant challenged a provision in the Missouri Constitution that took effect after the charged murder, and that abrogated prior Missouri law under which Kring's previously accepted plea of

---

4. The defendant also claims violation of the *ex post facto* law prohibition in Article 1, Section 24, of the Indiana Constitution, but he presents no argument that it requires a different

analysis than its federal counterpart. We therefore consider only the federal claim. *White,* 772 N.E.2d at 411.

guilty to second degree murder precluded his being retried for first degree murder. According to the Supreme Court, the question was whether the new state constitutional provision "deprive[d] the defendant of any right of defense which the law gave him when the act was committed, so that as to that offense it [was] *ex post facto.*" *Kring,* 107 U.S. at 225, 2 S.Ct. at 447, 27 L.Ed. at 507. The Court reversed a defendant's death sentence on grounds that it was imposed under an *ex post facto* law, and stated:

> We are of [the] opinion that any law passed after the commission of an offense which ... in relation to that offense, or its consequences, *alters the situation of a party to his disadvantage,* is an *ex post facto* law; and ... [n]o one can be criminally punished in this country, except according to a law prescribed for his government by the sovereign authority before the imputed offense was committed, and which existed as a law at the time.

107 U.S. at 235, 2 S.Ct. at 455, 27 L.Ed. at 511 (internal quotations and citations omitted, emphasis added).

In 1990, however, the Supreme Court expressly overruled *Kring,* declaring that its "alters the situation of a party to his disadvantage" language "departs from the meaning of the Clause as it was understood at the time of the adoption of the Constitution." *Collins v. Youngblood,* 497 U.S. 37, 50, 110 S.Ct. 2715, 2723, 111 L.Ed.2d 30, 44 (1990). Even before *Youngblood,* various opinions of the Supreme Court had declined to find an *ex post facto* violation in statutes that arguably altered "the situation of a party to his disadvantage." For example, in *Beazell v. Ohio,* 269 U.S. 167, 46 S.Ct. 68, 70 L.Ed. 216 (1925), the Court refused to reverse an embezzlement conviction where the joint defendants' motions for separate trials was

denied based on an Ohio statute that made the granting of separate trials discretionary. Enacted after the date of the charged offense, this statute amended prior law under which Beazell would have been entitled to a separate trial as a matter of right. Rejecting a claim of *ex post facto,* the Court stated: "[I]t is now well settled that statutory changes in the mode of trial or the rules of evidence, which do not deprive the accused of a defense and which operate only in a limited and unsubstantial manner to his disadvantage, are not prohibited." 269 U.S. at 170, 46 S.Ct. at 69, 70 L.Ed. at 218. The Court explained:

> Just what alterations of procedure will be held to be of sufficient moment to transgress the constitutional prohibition cannot be embraced within a formula or stated in a general proposition. The distinction is one of degree. But the constitutional provision was intended to secure substantial personal rights against arbitrary and oppressive legislation, and not to limit the legislative control of remedies and modes of procedure which do not affect matters of substance.

269 U.S. at 171, 46 S.Ct. at 69, 70 L.Ed. at 218 (citations omitted).

Of particular significance is *Dobbert v. Florida,* 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977), in which the United States Supreme Court faced an *ex post facto* claim that addressed a change in the function of judge and jury in the imposition of death sentences in Florida between the time of the charged acts and the time of trial. As of the date of the offenses, Florida law provided that a person convicted of a capital felony was to be punished by death unless the verdict included a recommendation of mercy by a majority of the jury. By the time of trial, Florida had enacted a new death penalty procedure under which the death sentence would be

discretionary with the trial judge after separate sentencing hearings before jury and the court, and upon receiving a nonbinding recommendation from a majority of the jury. Dobbert argued that the change in the role of the judge and jury between the time of the murder and the time of trial constituted an *ex post facto* violation. The Court rejected this argument, noting "[e]ven though it may work to the disadvantage of a defendant, a procedural change is not *ex post facto.*" 432 U.S. at 293, 97 S.Ct. at 2298, 53 L.Ed.2d at 356. "In the case at hand," the Court stated, "the change in the statute was clearly procedural. The new statute simply altered the methods employed in determining whether the death penalty was to be imposed; there was no change in the quantum of punishment attached to the crime." 432 U.S. at 293–94, 97 S.Ct. at 2298, 53 L.Ed.2d at 356.[5]

The United States Supreme Court recently revisited and extensively explored the prohibition against *ex post facto* laws in *Stogner v. California*, 539 U.S. 607, 123 S.Ct. 2446, 156 L.Ed.2d 544 (2003). The opinion endorses the categorical description of *ex post facto* laws set forth by Justice Chase more than 200 years ago in *Calder v. Bull*, 3 U.S. 386, 3 Dall. 386, 390–91, 1 L.Ed. 648, 650 (1798), noting that it continues to "provid[e] an authoritative account of the scope of the *Ex Post Facto* Clause." *Stogner*, 539 U.S. at ——, 123 S.Ct. at 2450, 156 L.Ed.2d at 552. Justice Chase wrote:

I will state what laws I consider *ex post facto* laws, within the words and the intent of the prohibition. 1st. Every law that makes an action done before the passing of the law, and which was inno-cent when done, criminal; and punishes such action. 2d. Every law that aggravates a crime, or makes it greater than it was, when committed. 3d. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offence, in order to convict the offender. All these, and similar laws, are manifestly unjust and oppressive.

*Calder*, 3 U.S. 386, 3 Dall. at 390–91, 1 L.Ed. at 650 (*quoted in Stogner*, 539 U.S. at ——, 123 S.Ct. at 2450, 156 L.Ed.2d at 552). In *Stogner*, the Court invalidated as an *ex post facto* law a 1993 California criminal statute extending a three-year statute of limitations in certain sex-related child abuse cases. Stogner had been charged under the new law for offenses committed between 1955 and 1973. The Court held that the change in the applicable statute of limitations "falls within Justice Chase's second category of *ex post facto* laws." 539 U.S. at ——, 123 S.Ct. at 2461, 156 L.Ed.2d at 565.

The 2002 amendment to the Indiana penalty statute reassigns from the trial judge to the jury the final decision on whether the charged aggravating circumstance or circumstances have been proved beyond a reasonable doubt, whether any mitigating circumstances that exist are outweighed by the aggravating circumstance(s), and whether to impose a sentence of death or life imprisonment without parole. We find that the nature of the challenged legislative change is equivalent to that which *Dobbert* concluded did not

---

**5.** In addition to finding no *ex post facto* violation because the changes were procedural, the Court also found the changes in the procedure to be ameliorative, but it expressly noted that these "are independent bases for our decision." 432 U.S. at 292, 97 S.Ct. at 2298, 53 L.Ed.2d at 355, n. 6.

violate the *Ex Post Facto* Clause because it was merely procedural and did not change the quantum of punishment attached to the crime. This change in procedure does not implicate any of Justice Chase's categories of *ex post facto* laws. It does not criminalize conduct done before enactment. It does not make the crime greater than when committed. It does not increase the punishment. It does not alter the evidence required to convict.

Because the 2002 amendment to the penalty statute does not violate the *Ex Post Facto* Clause, the trial court was required to sentence the defendant in accordance with the jury's recommendation of life imprisonment without parole, regardless of any additional evidence that might have been presented at the judicial sentencing hearing following a continuance. The defendant was thus not harmed by the trial court's denial of his motion for a continuance of the final sentencing hearing.

### 4. Sentence Modification Instruction

 The defendant also contends that the trial court erred during the penalty phase of the trial by giving Instruction No. 14:

> If the defendant files a request to modify the sentence imposed by the judge within three hundred and sixty-five days after the date of sentencing, the judge has discretion to modify the sentence over the objection of the prosecutor. If the defendant files a request to modify the sentence after three hundred and sixty-five days have past since sentencing, the judge does not have any discretion to modify the sentence unless the prosecutor agrees.

Appellant's Appendix, vol. II, p. 458. This instruction arises from Indiana Code § 35–38–1–17, which provides in relevant part:

> (a) Within three hundreds sixty-five (365) days after:
>
> (1) the defendant begins serving his sentence;
>
> (2) a hearing at which the defendant is present and of which the prosecuting attorney has been notified; and
>
> (3) obtaining a report from the department of correction concerning the defendant's conduct while imprisoned; the court may reduce or suspend the sentence. The court must incorporate its reasons in the record.
>
> (b) If more than three hundred sixty-five (365) days have elapsed since the defendant began serving the sentence and after a hearing at which the convicted person is present, the court may reduce or suspend the sentence, subject to the approval of the prosecuting attorney....
>
> . . .
>
> (d) The court may suspend a sentence for a felony under this section only if suspension is permitted under IC 35–50–2–2.

Indiana Code § 35–50–2–2(a) generally provides that the sentencing court "may suspend any part of a sentence for a felony." This is limited by subsection 2(b), which states that, with respect to certain enumerated crimes, including murder, "the court may suspend only that part of the sentence that is in excess of the minimum sentence."

The defendant asserts that Instruction No. 14 correctly states the law, and the State agrees.[6] The defendant, however,

---

**6.** Because neither party raises the issue, at this time we express no opinion as to whether Indiana Code § 35–38–1–17 applies to penalties imposed under Indiana Code § 35–50–2 as revised by the 2002 amendment.

contends that giving the instruction over his objection constituted reversible error because it was incomplete and therefore misleading for two reasons. First, he argues that, if the penalty statute, Ind.Code § 35–50–2–9, as amended, is construed to make the jury's recommendation binding upon the court such that the sentence may not be modified pursuant to Indiana Code § 35–38–1–17 (quoted above), then giving the instruction improperly diminished in the jurors' minds the importance and binding effect of their decision favoring life without parole. Second, the defendant urges that the instruction failed to inform the jury that, if he is sentenced to a term of years, the sentence could not be suspended below the minimum sentence provided by statute for the charged offense of murder. He urges that this left the jurors "wondering whether, despite their recommendation, the defendant may ultimately walk out on probation." Br. of Appellant at 20.

The State responds that Instruction No. 14 did not misstate the law or mislead the jury. It argues that the instruction aided the jury in understanding the full range of sentencing available should the jury not choose life without parole. The State points to other instructions that informed the jury of the minimum sentence for murder and the availability of credit time, and argues there was no basis in the instructions for the jury to speculate that the defendant might eventually be released on probation.

The defendant's trial objection to Instruction No. 14, while adequately preserving his claim that the instruction was incomplete, did not assert that the instruction diminished the jurors' sense of the importance and binding effect of their decision. The defendant's stated objection was:

that any modification can only be in accordance with law, that is the sentence could not be modified to anything other than in accor---other than that which the court could have imposed at the original sentencing and, therefore, may lead the jury to believe that at some time in the future it is possible that a defendant could receive something less than what their recommendation might be.

Transcript vol. 6, p. 920. The defendant may not appeal the giving of an instruction on grounds not distinctly presented at trial. Ind. Trial Rule 51(C); *Scisney v. State*, 701 N.E.2d 847, 849 (Ind.1998) (concluding that "appellate review of a claim of error in the giving of a jury instruction requires a timely trial objection clearly identifying both the claimed objectionable matter and the grounds for the objection"); *Mitchem v. State*, 685 N.E.2d 671, 675 (Ind.1997) (waiving one of defendant's alleged errors where defendant failed to distinctly state his objection and the grounds for it at trial). In *Luna v. State*, 758 N.E.2d 515, 518 (Ind.2001), the defendant "made a timely trial objection and identified the claimed objectionable matter *but the objection did not clearly identify the grounds for the objection*" (emphasis added). We held in *Luna* that a defendant must identify "specific grounds in support of an objection to an incorrect jury instruction," particularly where the trial court focuses its attention on the language of a misleading or incomplete proposed instruction. *Id.* Because the *Luna* defendant failed to state the ground for her objection that she later asserted on appeal, we considered her argument waived. Similarly, the defendant here may not claim on appeal that the instruction diminished the jury's sense of the importance and binding effect of its decision.

Notwithstanding the fact that the defendant's claim is procedurally defaulted by reason of the failure to present this claim

at trial, we nevertheless observe that reversal is also unwarranted on the merits of this claim. The Supreme Court in *Caldwell v. Mississippi*, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), held unconstitutional a prosecutor's closing arguments to a jury which misinformed the jury regarding sentencing and thereby undermined the jury's sense of responsibility for the sentence imposed. We do not believe that the jury's sense of responsibility could reasonably have been undermined by the omission of language in Instruction No. 14 explaining the limits on a judge's authority to suspend or reduce a sentence within 365 days of sentencing. The jury was advised in its preliminary penalty phase instructions that their "recommendation [was] an important part of the sentencing process" and that "[t]he law requires that the judge follow [its] sentencing recommendation." Appellant's Appendix at 442. Furthermore, during the final penalty phase instructions, Instruction No. 15, read to the jury immediately following Instruction No. 14 that the defendant challenges, declared: "The law requires that [the jury's] recommendation in regard to sentencing be followed by the judge." [7] *Id.* at 459. We conclude that the relatively insubstantial omission in Instruction No. 14 could not reasonably have led the jury to speculate that the trial judge would reduce or suspend the sentence below the minimum statutory sentence for the offense of murder, thereby improperly undermining their sense of responsibility for their decision.

As to the defendant's claim, raised at trial, that Instruction No. 14 misled the jurors regarding whether, if they recommended a term of years, he could be prematurely released, we acknowledge that the instruction did not advise the jury that the trial court may not suspend a sentence for less than the minimum forty-five year statutory sentence for murder.[8]

We consider the instructions "as a whole and in reference to each other" and do not reverse the trial court "for an abuse of that discretion unless the instructions as a whole mislead the jury as to the law in the case." *Carter v. State*, 766 N.E.2d 377, 382 (Ind.2002). An error in a particular instruction results in reversal only where the entire body of instructions misleads the jury as to the law in the case. *Edgecomb v. State*, 673 N.E.2d 1185, 1196 (Ind.1996). Instruction No. 10 explained the sentencing consequences if life imprisonment without parole is not imposed. It stated that "a judge could impose a sentence on the defendant ranging from a minimum of forty-five years if the sentences are ordered served concurrently to a maximum of one hundred and thirty years if the sentences are ordered served consecutively." Appellant's Appendix at 454. Instruction No. 11 related to the reduction of a term of years for earned credit time that could reduce time served to "fifty percent of the sentence imposed by the judge." *Id.* at 455.

Taking the instructions as a whole, we are not persuaded that Instruction No. 14, by generally mentioning that "the judge

7. These statements stating that the court must follow the jury's recommendations may imply that the statutory authority to suspend or reduce a sentence under Indiana Code § 35–38–1–17 does not apply to sentences for life without parole under the amended statute. As noted in footnote 5, we do not address this question. However, if we assume that a judge may suspend or reduce a life without

parole sentence, the instructions stating that the court must follow the jury's sentencing decision, while arguably incorrect, certainly did not undermine the jury's sense of responsibility. If anything, such instructions emphasized the importance of the jury's decision.

8. Ind.Code § 35–50–2–3.

has discretion to modify the sentence" could reasonably have lead the jury to improperly speculate that "the defendant may ultimately walk out on probation" as argued by the defendant. There was no significant possibility that the jury was misled to believe that the defendant could be prematurely released.

### Conclusion

The judgment of the trial court is affirmed.

SHEPARD, C.J., and SULLIVAN, J. concur.

BOEHM, J., concurs in result with separate opinion in which RUCKER, J., concurs in part.

BOEHM, J., concurring in result.

Until 2002, the recommendation of the jury in an Indiana death penalty case was just that—a recommendation—and the trial judge was free to impose death despite a jury's recommendation to the contrary or to refuse to follow a jury's recommendation that death be imposed. Ind.Code § 35–50–2–9(e) (1998); *Martinez Chavez v. State*, 534 N.E.2d 731, 734 (Ind.1989); *Minnick v. State*, 544 N.E.2d 471, 482 (Ind.1989). In 2002, the General Assembly amended Indiana's death penalty statute to provide that the jury is to "recommend" whether death or life without parole (LWOP) is to be imposed, and the trial court is to sentence "accordingly." I.C. § 35–50–2–9(e) (2002). The amendment by its terms applies to sentences imposed after June 30, 2002. Trial and ultimate sentencing in this case, as in several others, occurred over a period of time that spanned that date. I believe the confusion generated by this amendment might under these circumstances have produced an unreliable sentence, but the defendant has not established that that occurred here. For that reason I concur in the result

reached by the majority. However, I think the majority's reason for affirming depends on some unstated assumptions with which I do not agree.

In a nutshell, the trial court first assumed that the new statute would apply and gave preliminary instructions to the jury that its "recommendation" as to the sentence would be binding. Both the guilt and penalty phases of the trial were completed on June 24, 2002. At that point it seemed possible that Helsley's sentence would be imposed before June 30, in which event the new statute by its terms would plainly be inapplicable. In fact the trial judge did not impose the sentence until a sentencing hearing three weeks later, after June 30. At the opening of the sentencing hearing on the morning of July 19, 2002, the trial judge expressed concern that the application of the new statute might be unconstitutional as an *ex post facto* law. For this reason he announced that he would exercise discretion whether to impose LWOP, as the statute permitted for sentences imposed before July 1, 2002. At that point the defendant unsuccessfully moved for a continuance based on this change in the ground rules.

I agree with the majority that the statute is not an *ex post facto* law. *Ritchie v. State*, 809 N.E.2d 258, 263–64, 2004 WL 1153062 (Ind.2004). I also agree that the current Indiana death penalty statute on its face can be read to attempt to make the jury's recommendation as to sentencing binding on the trial court. It may even be the case that the legislature thought that was what it was doing by enacting the 2002 amendments, notwithstanding its retention of the term "recommendation" to describe the result of the jury's deliberations. However, I do not believe that the statute accomplishes this.

## I. The 2002 Amendment to the Indiana Death Penalty Statute

The first issue presented by the 2002 statute is whether the trial judge has any alternatives to imposing the sentence recommended by the jury, and if so what those alternatives are and how they are to be exercised. The majority opinion can be read to imply that the trial court is bound by the jury's recommendation under all circumstances. I do not believe that is a correct reading. Even if the General Assembly thought it was making the jury's recommendation binding on the trial court, the statute does not mandate blind implementation of the jury's recommendation as to penalty. Indeed, if it were read to achieve that result, under some scenarios it would deny due process. None of these issues is presented by the parties in this case, but the reasoning of the majority raises them up. For purposes of this case, the issue posed by the majority's reasoning is whether the statutory framework by itself is sufficient to eliminate error arising from the denial of a continuance at the guilt phase after the trial court reversed its position as to the binding effect of the jury's recommendation. I think it is not, though on the facts of this case, I agree that the defendant has established no prejudice from the error that occurred here.

The 2002 amendments require the jury to perform two functions. First, the jury engages in a traditional fact-finding exercise to determine if one or more "aggravating circumstances" is found beyond a reasonable doubt. In Helsley's case, that circumstance was that Helsley murdered two people, and there seems no doubt that the jury made the requisite finding. Second, the jury is to determine whether the aggravating circumstances outweigh the mitigating circumstances. As explained elsewhere, this determination is not subject to a reasonable doubt standard, and is qualitatively different from the finding of eligibility for the penalty. *Ritchie v. State,* 809 N.E.2d 258, 264–68, 2004 WL 1153062 (Ind.2004); *See also Ex Parte Waldrop v. Alabama,* 859 So.2d 1181, 1189 (Ala.2002); *People v. Prieto,* 30 Cal.4th 226, 133 Cal.Rptr.2d 18, 66 P.3d 1123, 1147 (2003); *Brice v. State,* 815 A.2d 314, 322 (Del.2003); *Oken v. State,* 378 Md. 179, 835 A.2d 1105, 1120 (2003); *Nebraska v. Gales,* 265 Neb. 598, 658 N.W.2d 604 (2003).

The jury's finding of eligibility for the penalty is a fact to be found based on evidence and subject to a reasonable doubt standard. This provision does not override the longstanding principle that the trial judge is free to act as a "thirteenth juror" and set aside the jury's findings as to the occurrence of an eligibility factor. The thirteenth juror concept is found in Indiana Trial Rule 59(J)(7) [1] and also appears in Trial Rule 50 governing judgments on the evidence. As we recently explained in *Neher v. Hobbs,* 760 N.E.2d 602, 607 (Ind.2002), under this doctrine, the trial court may order a new trial if the jury's verdict is against the weight of the evidence. *See also State v. Johnson,* 714 N.E.2d 1209, 1211 (Ind.App.1999) (citations omitted); *Moore v. State,* 273 Ind. 268, 403 N.E.2d 335, 336 (1980). The trial judge would be fully warranted in setting aside a jury's recommendation if the judge

---

1. Ind. Trial Rule 59(J)(7): "In reviewing the evidence, the court shall grant a new trial if it determines that the verdict of a non-advisory jury is against the weight of the evidence; and shall enter judgment, subject to the provisions herein, if the court determines that the verdict of a non-advisory jury is clearly erroneous as contrary to or not supported by the evidence, or if the court determines that the findings and judgment upon issues tried without a jury or with an advisory jury are against the weight of the evidence."

concluded the facts required for eligibility for the death penalty were not supported by the evidence. *Neher*, 760 N.E.2d at 607; *Johnson*, 714 N.E.2d at 1211; *Moore*, 403 N.E.2d at 336. This failure to sentence "accordingly" would be the result of a traditional function of the trial judge, and amounts to a finding that an element that is required to impose the enhanced penalty was not established at trial.

This view of the eligibility finding was recently adopted as a matter of federal Sixth Amendment doctrine. Under *Ring v. Arizona*, 536 U.S. 584, 609, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), the "aggravating circumstances" necessary for the death penalty under the Indiana statute must found by a jury. These findings, like any other, must be based on the evidence or record. *Ring* applied to death penalty statutes such as Indiana's the requirements of *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), that all facts necessary to establish a crime be found by the jury.

I believe the 2002 amendment was intended to respond to *Apprendi* and to anticipate *Ring*. The amendment sought to do this by eliminating the judge's power to impose death if there were no jury recommendation and therefore no clear finding by the jury that the facts warranting the death penalty were proven. To be sure, the language chosen by the legislature may be taken as a directive to implement blindly whatever result is "recommended" by the jury. However, the 2002 amendment was not intended to overturn traditional checks on jury error or jury discretion, or to eliminate the trial judge's function under Trial Rule 59. Rather, in light of the substantial body of law surrounding the allocation of function between judge and jury, I would take a directive from the legislature to sentence "accordingly" to mean "according to standard jurisprudential processes." This would include setting aside findings not supported by the evidence.

I believe this construction is not only desirable, but necessary to preserve the statute. There may be some issue as to the quantity of evidence that may support a finding, but I have no doubt that imposing death without any proof at all of a necessary element would constitute a denial of due process. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Garner v. Louisiana*, 368 U.S. 157, 164, 82 S.Ct. 248, 7 L.Ed.2d 207 (1961); *Thompson v. City of Louisville*, 362 U.S. 199, 206, 80 S.Ct. 624, 4 L.Ed.2d 654 (1960). Indeed, under *Ring*, the Sixth Amendment right to jury trial requires that the finding of eligibility for the death penalty be found by the trier of fact. There is a second problem with taking this statute to mandate rubber stamping the jury's recommendation. Because I do not read the statute to do that I do not need to address whether, if that were the thrust of the statute, it would also run afoul of state constitutional limitations on the legislature's ability to control the processes of the judicial branch.[2] It is sufficient to establish, as I believe I have, that the statute cannot be read to require the judge to implement the jury's recommendation in all circumstances.

To this point, I believe there is no difference between the majority's position and mine. The effect of the jury's recommen-

---

**2.** A legislative attempt to rearrange the functions of judge and jury would appear to present a conflict with the rules adopted by this court. To the extent a statute and Trial Rule conflict on a matter of procedure, there is precedent suggesting the Trial Rules trump the statute. *See, e.g., State ex rel.Blood v. Gibson Circuit Court*, 239 Ind. 394, 157 N.E.2d 475, 479 (1959). Whether that doctrine applies here is a matter for another day.

dation as to the second "finding"—that the aggravators outweigh the mitigators—presents a different and more difficult problem. This second step is the process of selection of the penalty to be imposed upon the individual defendant from among those determined by the statute to be eligible. This weighing by the jury is not a finding at all in the same sense that a traditional jury finding is a determination of as to a matter of historical fact, a conclusion that something did or did not occur. *Ritchie*, 809 N.E.2d 258, 264–68. Rather, the "finding" as to weighing is a subjective assessment that is not susceptible of "proof" whether by a preponderance of evidence or beyond a reasonable doubt.

Because the weighing process is unconstrained by the limits that reason, science and experience place on fact-finding, it is arguably free from the requirement which the law places on fact-finding that it be supported by the record. But I believe I have already demonstrated that under the 2002 amendments, the direction to sentence "accordingly" cannot be taken wholly literally because it would impose sentences not supported by the evidence. Thus, to make sense of this statute one must find "accordingly" to incorporate existing law. One well established doctrine is that the Eighth Amendment requires that a defendant be permitted to present any relevant mitigating evidence. *Penry v. Johnson*, 532 U.S. 782, 797, 121 S.Ct. 1910, 150 L.Ed.2d 9 (2001). This surely includes a right to present the evidence to the ultimate decision-maker.

Existing law in place before the 2002 amendment required the judge before imposing sentence to review and consider a sentencing report containing a variety of matters not before the jury. Ind.Code §§ 35–38–1 *et seq.* (1998). Putting all of this together, it seems to me that the only way to reconcile the statute with these requirements is to conclude that a sentence imposed "accordingly" means a sentence that takes into account the jury's recommendation and implements it, subject to the constraints imposed by law.[3] To be sure, a judge is not free under the 2002 amendment to impose a death sentence if the jury does not recommend it. See *State v. Barker*, 809 N.E.2d 312, 316–18, 2004 WL 1153106 (Ind.2004). But the instruction to sentence "accordingly" includes the need to set aside a recommendation if it is not supported by evidence and the power to decline to impose death if, after consideration of all aggravating and mitigating factors, including those in the sentencing report, and giving due deference to the jury's recommendation, the judge concludes that death is inappropriate.

Finally, as already pointed out, the 2002 amendment is susceptible to readings that produce unintended consequences. I would think the legislature may wish to consider reestablishing the requirement that the judge as well as the jury endorse

---

**3.** The Indiana statute is unique in its use of "recommendation" and "accordingly." I find no directly relevant precedent, and few cases that even touch on the subject. The New Mexico statute is more explicit in its directive that the trial court "shall" impose the sentence the jury "specifies." It provides: "In a jury sentencing proceeding in which the jury unanimously finds beyond a reasonable doubt and specifies at least one of the aggravating circumstances enumerated in Section 6 of this act, and unanimously specifies the sentence of death pursuant to Section 3 of this act, the court shall sentence the defendant to death." N.M. Stat. Ann. 31–20A–3 (1978). The Supreme Court of New Mexico takes the view under this statute that review of the sentence is restricted to the Supreme Court and the trial court is required to impose death under the statute if the jury "specifies" it. *State v. Guzman,* 102 N.M. 558, 698 P.2d 428, 429 (1985).

the appropriateness of a death sentence. The judge's thoughtful concurrence was required under *Harrison v. State,* 659 N.E.2d 480 (Ind.1995). To the extent the 2002 amendment dilutes or removes that element, it injects the potential for inherent unfairness in the administration of the death penalty in this state.

A recommendation to impose death plainly might be made differently by different juries presented with the same record. This produces a randomness in who is and who is not put to death that turns on the composition of each particular jury. In my view that is, if not an Eighth Amendment violation, at least a very undesirable feature of a death penalty statute. *Cf., Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972); *Gregg v. Georgia,* 428 U.S. 153, 194, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). Although the legislature may prescribe the penalty for a crime, and thereby remove discretion from a sentencing judge, it is quite another thing to prescribe by statute that the jury's recommendation is binding on the judge in deciding whether to impose a death sentence. It is no answer to the randomness concern to say that the criminal process is inherently subject to jury variation because different juries might resolve factual issues differently on the same record. That is of course true, and a necessary consequence of leaving judgments to human beings. But a jury charged with making a traditional finding of fact is constrained by relatively objective and generally accepted laws of physics and other sciences, and by their common understanding of human nature. A recommendation whether the aggravators outweigh the mitigators is an entirely different exercise as to which the basic assumptions and biases of individual jurors are much more dominant. We have no better process, so we must live with the possibility of human error in the fact-finding that determines eligibility for the penalty. But there is no necessity to inject this much higher degree of randomness into the selection process.

## II. Helsley's Sentence

With this framework in mind, it seems to me the majority's rationale for sustaining Helsley's sentence is not sufficient. Until the beginning of the penalty phase of the trial, the judge had concluded that the jury's recommendation would not be a recommendation at all, but would be a decision. In other words, the "recommendation" would be binding. The parties were so advised. Then, at the outset of the penalty phase the judge announced he would treat the jury's recommendation as just that, a recommendation, and would reserve final decision to himself. At that point the defendant unsuccessfully moved for a continuance. It surely is error to give the parties the wrong standard by which the jury's findings will be evaluated. Thus, the majority's view is in substance a holding of harmless error.

The majority reasons that because Helsley chose not to present evidence before the jury at the penalty phase, he was precluded from presenting it to the trial judge at the sentencing, and therefore there is no error in denying the continuance of the sentencing phase and refusing to receive additional evidence. I think there are two problems with this analysis. First, as already noted, I do not believe the statute should be construed to eliminate the judge's ability to consider matters contained in a sentencing report that may not be presented to the jury. But even if I am wrong in this view, and the recommendation is binding, it is not clear that the evidence at a guilt phase that may bear on the weighing would be the same whether the jury's recommendation is binding or not. A defendant preparing for the guilt

phase under the belief that the recommendation will be advisory only might well withhold evidence from the guilt phase in the belief that the sentencing will present an additional opportunity to present matters to the judge.

I therefore do not agree that it is in every instance necessarily harmless error if the trial court reverses its ruling as to the binding effect of the jury's recommendation, and denies the defendant a continuance to adjust to the newly announced standard. But Helsley does not point to anything he claims he would have presented or developed if he had been given a continuance, so he has not established reversible error in denial of the continuance. Nor does he identify any matter that was presented to the jury, but would have been omitted if he had time to adjust to the new procedure. He thus fails to show any prejudice from the confusion. For that reason, and that reason alone, I agree with the majority that Helsley has not established reversible error.

RUCKER, J., concurring in part.

Except for that portion expressing the view that the weight to be given aggravators and mitigators is not subject to a reasonable doubt standard, I fully concur with Justice Boehm's separate opinion. I continue to believe that before capital punishment can be imposed a jury must be convinced beyond a reasonable doubt that the aggravating circumstances outweigh the mitigating circumstances. *See Ritchie v. State*, 809 N.E.2d 258, No. 49S00–0011–DP–638 (Ind. May 25, 2004) (Rucker, J., dissenting in part).