On Petition for Rehearing
SULLIVAN, Justice.
Zolo Agona Azania, formerly known as Rufus Lee Averhart, was convicted in 1982 of the 1981 murder of Gary Police Lieutenant George Yaros. Azania was sentenced to death in 1982 and re-sentenced to death in 1996. More detailed factual and procedural history of Azania’s case is available in earlier opinions. E.g., State v. Azania, 865 N.E.2d 994, 996-97 (Ind.2007). It is sufficient for purposes of this opinion to say that Azania’s conviction for murder stands, but the death sentence has been twice overturned. Most recently, we reversed a trial court order that prohibited the State from seeking the death penalty against Azania for the third time. Id. We *703 now grant and address the State’s petition for rehearing of that decision, in order to clarify which iteration of Indiana’s death penalty statute applies to a new sentencing phase.
The State reads our most recent opinion as holding that the new sentencing phase is subject to the version of the death penalty statute in effect at the time of Azania’s crime. It contends that Azania should instead be sentenced under the current version of the death penalty statute. Azania responds that our opinion was correct on this point, although he contests other aspects of our opinion in his own petition for rehearing. Azania’s petition for rehearing is denied.
The State’s argument does not discuss another relevant change in Indiana’s capital sentencing regime: the addition of life without parole (“LWOP”) to the jury’s options when recommending sentences for certain murders.
When Azania murdered Lt. Yaros in 1981, two options existed for sentencing a defendant convicted of murder in a capital case: a defendant could either receive a sentence of death or a term of years. Ind. Code §§ 85-50-2-3, 9 (1982). Under the death penalty statute then in effect, the trial judge had the final say in sentencing after hearing the recommendation of the jury. Id. § 9(e).
In 1993, the Legislature added an intermediate sentencing option. The jury in the sentencing phase of a capital case was to be instructed that, in addition to the death penalty or a term of years, it had the option to recommend LWOP. See id. § 9(d) (1993). The Legislature added a savings clause that made LWOP available only where the murder had been committed after June 30, 1993. Pub.L. No. 250-1993, § 3. This savings clause has never been repealed or modified. In 1994, we confronted the question of how to handle a defendant who had committed a murder before, but was sentenced after, the LWOP option took effect. We held that the language of the statute made LWOP available only with respect to murders committed after the savings clause date of June 30, 1993. State v. Alcorn, 638 N.E.2d 1242 (Ind.1994). Defendants who committed murder before that date, but who for whatever reason were not sentenced until July 1993 or later, would not be eligible for LWOP. Id. The jury in Azania’s second sentencing phase in 1996 was not given an LWOP instruction. (Record of Proceedings at 3668-75, Azania v. State, 730 N.E.2d 646 (Ind.2000) (No. 02S00-8808-PC-751)).
The 1993 amendment did not alter the trial court’s authority to impose upon the defendant a sentence other than that recommended by the jury. I.C. § 35-50-2-9(e) (1993).
In 2002, the Legislature amended the death penalty statute again. Now, when the trial court judge receives a sentencing recommendation from the jury, the judge is to sentence the defendant “accordingly” — whether the jury recommends LWOP, the death penalty, or a term of years. Id. § 9(e) (Supp.2006). The 2002 amendment applies to sentencing phases that occur after June 30, 2002. Id.
Here, where the murder of Lt. Yaros occurred in 1981, the original trial and sentencing phases occurred in 1982, the first re-sentencing phase occurred in 1996, and the second re-sentencing phase will occur after 2002, the pre-1993, 1993, and 2002 statutes are all implicated. The State argues that Azania must be sentenced under the 2002 death penalty statute, with the trial court to impose the sentence “according!;]” to the jury’s recommendation. Azania argues that the pre-2002 death penalty statute should apply, with the trial *704 court allowed to impose a sentence other than death even if recommended by the jury. For clarity’s sake, we must address the impact of both the 1993 and 2002 amendments on Azania’s sentencing.
We now correct and clarify our earlier statements in State v. Azania, 865 N.E.2d 994: Azania’s new sentencing proceeding is to be conducted pursuant to the current, post-2002, death penalty statute, I.C. § 35-50-2-9 (Supp.2006). However, in accordance with Pub.L. No. 250-1993, § 3, and Alcorn, LWOP is not available to him as a sentence, even though it is available under the current statute.
Support for this outcome is found on the face of the 1993 addition of LWOP to the Indiana sentencing scheme for murder. Public Law 250-1993 specifically states that LWOP is to be available only in sentencing phases for defendants who committed their crimes after June 30, 1993. Lt. Yaros’s murder occurred in 1981. As in 1996, Azania is not eligible for LWOP, despite its appearance in the death penalty statute then and now. I.C. § 35-50-2-9 (Supp.1996) & (Supp.2006).
Regarding the 2002 amendment, we have held, in the intervening years between it and this appeal, that it was a procedural, not a substantive, amendment. See, e.g., Helsley v. State, 809 N.E.2d 292 (Ind.2004); Ritchie v. State, 809 N.E.2d 258 (Ind.2004). In the case of a defendant who committed murder between July 1, 1993, and June 30, 2002, it is only strictly procedural. A murder committed before July 1, 1993, however, was committed in a substantively different sentencing realm than one committed afterward. What the sentence might be, rather than how it will be determined, is at stake in the new regime.
We recognize that the applicability of the 2002 amendment raises several issues. The first part of the relevant subsection of I.C. § 35-50-2-9 reads: “(e) For a defendant sentenced after June 30, 2002, except as provided by IC 35-36-9, if the hearing is by jury, the jury shall recommend to the court whether the death penalty or life imprisonment without parole, or neither, should be imposed.” Read literally, such a procedure seems relatively straightforward. But the code provision makes no mention of the savings clause in Pub.L. No. 250-1993, § 3, which directs that defendants convicted of a murder committed before June 30, 1993, are ineligible for LWOP. This issue is relatively easily addressed by applying the savings clause to the code.
Second, it is likely that when the Legislature set an effective date for the 2002 amendment of July 1, 2002, it was assuming that sentencing would immediately follow the guilt phase. Our past interpretation of I.C. § 35-50-2-9(d) explains that we must occasionally make sense of a provision — here, subsection (e) — by taking practical considerations into account. We held in Burris v. State that I.C. § 35-50-2-9 is not meant to be read absolutely literally: the first sentence of subsection (d) reads, “If the defendant was convicted of murder in a jury trial, the jury shall reconvene for the sentencing hearing,” but we do not read the statute to mean that we must track down all the members of the original guilt-phase jury and reunite them to hear another penalty phase if one is required. Burris v. State, 642 N.E.2d 961, 963 (Ind.1994); see also id. at 969 (Sullivan, J., concurring) (“This court must fill in rules for proceeding in death penalty cases in those circumstances where the legislature has not provided explicit guidance.”). Still, as outlined below, we believe that the procedural nature of the 2002 amendment and a defendant’s extant constitutional protections overcome this *705 separation between what the Legislature probably foresaw and what we face now.
Our holding of course principally means that the trial judge will be bound by the jury’s sentencing recommendation, as opposed to the trial judge taking the recommendation as exactly that — a recommendation. This distinction between the pre- and post-2002 death penalty statutes looms large in the minds of counsel for both the State and Azania. With that in mind, we call specific attention to both the majority and concurring opinions in Hels-ley. Though the trial judge must sentence “accordingly,” we do not expect Indiana trial judges to enter sentences that are illegal under the United States or Indiana Constitution. Justice Boehm ably emphasized this point in his concurring opinion in Helsley, and it bears mention here as well. Helsley, 809 N.E.2d at 305-06 (Boehm, J., concurring). In Azania’s case, the specter of an unconstitutional sentence particularly arises where the jury might consider Azania’s future dangerousness. We held that future dangerousness was not a concern in Azania’s re-sentencing, because the trial judge would have the final say in applying the death penalty and because the jury system requires that we trust juries to follow the law in their deliberations. Azania, 865 N.E.2d at 1007-08. With the trial judge’s sentencing discretion limited by the 2002 death penalty statute amendment, we emphasize again, as we did in Helsley, that a trial judge is not expected, and indeed not permitted, to enter a sentence where the sentence, or the manner of arriving at it, is illegal.
We grant the State’s petition for rehearing and hold that Azania should be re-sentenced under the posi>-2002 death penalty statute, but without the availability of LWOP. Azania’s petition for rehearing is denied.
SHEPARD, C.J., and DICKSON, J., concur.
BOEHM and RUCKER, JJ., concur in part and dissent in part with separate opinions.