**CHALLENGER WRECKER MANUFACTURING INC.,**
Appellant (Defendant),

v.

The ESTATE OF John BOUNDY, II, Walter T. Culbertson d/b/a Indiana's Finest Wrecker Service, Dennis Lough and Delores Lough, Appellees (Plaintiffs).

No. 52A02–8907–CV–388.

Court of Appeals of Indiana,
Second District.

Sept. 27, 1990.

W. Brent Threlkeld, Rocap Witchger & Threlkeld, Indianapolis, for appellant.

James R. Fisher, Ice Miller Donadio & Ryan, Robert J. Doyle, Stewart Due Miller & Pugh, Indianapolis, for appellees.

BUCHANAN, Judge.

## CASE SUMMARY

Defendant-appellant Challenger Wrecker Manufacturing, Inc. (Challenger) appeals from jury verdicts in favor of the Estate of John Boundy (Boundy), Walter Culbertson d/b/a Indiana's Finest Wrecker Service (Culbertson), and Dennis and Delores Lough (Lough) [hereinafter collectively referred to as Appellees], claiming the trial court erred when it failed to give one of its tendered instructions, that the jury's verdicts were contrary to law, and that the trial court erred when it instructed the jury.

We affirm.

## FACTS

The facts most favorable to the jury's verdicts reveal that Culbertson was the owner of a wrecker service and was seeking to purchase a wrecker body to be fitted on a truck chassis which he already owned. A wrecker body consists of the boom, winches and the frame to which they are attached, which is mounted on a truck chassis to form a wrecker. Challenger manufactured wrecker bodies and Culbertson approached Challenger to purchase a wrecker body for his truck chassis. Culbertson's truck was a one-and-a-half-ton truck, which was considered a medium truck chassis, and possessed a gross vehicle weight (GVW) of 16,000 pounds. Culbertson sought a wrecker body which would enable him to tow medium trucks.

Challenger produced a wrecker body identified as a 4800T which, when mounted on a one-ton truck chassis would permit it to tow light trucks. Light trucks are trucks with a maximum GVW of 10,000 pounds. Challenger also produced a wrecker body identified as a 4800T Wide Body which was designed to fit on one-and-a-half-ton trucks, which Challenger recommended to Culbertson.

Culbertson purchased a 4800T Wide Body wrecker body from Challenger and Challenger installed the wrecker body on Culbertson's one-and-a-half-ton truck, creating the wrecker which is the object of this litigation.

On August 20, 1986, Culbertson arranged with an armored car company to tow an armored car from Indianapolis to Hartford City, Indiana. The GVW of the armored car was 9,670 pounds. Culbertson assigned the task to Lough, and instructed him to use the wrecker in question. After Lough had hooked up the armored car, he began his trip to Hartford City. During the trip, the load became unbalanced, the front wheels of the wrecker became airborne and the wrecker lost control. The wrecker and the armored car separated and the wrecker rolled end over end, injuring Lough. The armored car swerved into another lane of traffic and struck a vehicle operated by Boundy, killing him.

Boundy's estate brought suit for wrongful death, Culbertson joined the action and sought property damage, and Lough sued Challenger for his injuries and his wife sued for loss of consortium. The Appellees alleged that the wrecker was defective and unreasonably dangerous because the wrecker body, when towing heavy vehicles, would overload the truck chassis. They asserted that Challenger should have warned Culbertson about the dangers of overloading the wrecker.

After a jury trial held on April 17–20, 1989, the jury returned the verdicts for Boundy's estate in the amount of $1.5 million, for Culbertson in the amount of $11,000, for Lough in the amount of $350,000, and for Lough's wife in the amount of $20,000.

## ISSUES

Challenger raises five issues for our consideration, which we consolidate and restate as:

1. Whether the trial court erred when it failed to give an instruction?

2. Whether the jury's verdicts were contrary to law?

3. Whether the trial court erred when it instructed the jury?

## DECISION

ISSUE ONE—Did the trial court err when it failed to give one of Challenger's tendered instructions?

PARTIES' CONTENTIONS—Challenger argues that the failure of the trial court to give one of its tendered instructions was error because the instruction embodied its theory of the case. The Appellees respond that the instruction was not a correct statement of law, and therefore was properly refused.

CONCLUSION—The trial court properly refused the tendered instruction.

The instruction in question is:

"You are instructed that Challenger Wrecker Manufacturing, Inc. was entitled to assume that the purchaser of the wrecker, Walter T. Culbertson d/b/a Indiana's Finest Wrecker Service would instruct its employees in the operation and use of the 4800T wrecker."

Challenger claims this instruction embodied its theory of the case and therefore it was entitled to have the instruction read to the jury.

■ In considering whether error results from the refusal of a tendered instruction, our concern is: (1) whether the tendered instruction correctly states the law, (2) whether there is evidence in the record to support the giving of the instruction, and (3) whether the substance of the instruction is covered by other instructions which are given. *Picadilly, Inc. v. Colvin* (1988), Ind., 519 N.E.2d 1217; *K Mart Corporation v. Brzezinski* (1989), Ind.App., 540 N.E.2d 1276.

■ The defect of this instruction is that it is an incomplete statement of law. *Ernst v. Sparacino* (1978), 177 Ind.App. 610, 380 N.E.2d 1271. Our supreme court has determined that *before* a manufacturer may "assume" a purchaser will adequately warn or instruct its employees, the manufacturer must first have given adequate warnings to the purchaser. *Hoffman v. E.W. Bliss Co.* (1983), Ind., 448 N.E.2d 277; *Shanks v. A.F.E. Industries, Inc.* (1981), Ind., 416 N.E.2d 833. The tendered instruction, standing alone, was incomplete because it allowed the jury to "assume" that the purchaser would instruct its employees as to proper use of the wrecker, whereas the jury must first make a factual determination that adequate warnings were given. This prerequisite was not included in the tendered instruction.

Challenger claims that the instruction was approved by the supreme court in *Hoffman, supra.* While the court in *Hoffman* did consider a substantially similar instruction, it concluded that the instruction, when considered in combination with another instruction given, constituted a correct statement of law. The supreme court concluded that because the instructions were to be read together, it was not reversible error to include the instruction similar to the one we consider. That determination, however, does not support the proposition that the trial court erred by refusing the tendered instruction.

The situation before us is more analogous to the one in *Mullins v. Bunch* (1981), Ind., 425 N.E.2d 164. In *Mullins*, the supreme court reversed this court's decision, which reversed a trial court's judgment on the basis that the trial court erred in refusing to give a tendered instruction. This court's decision distinguished other decisions which had concluded the giving of similar instructions had not constituted reversible error. The supreme court observed: "While that is true, it hardly warrants the conclusion that the trial court's *refusal* to give the overbroad instruction here is reversible error. Rather, it is support for the contrary." *Mullins, supra,* at 167 (emphasis in original).

Similarly, the fact that a similar instruction was not reversible error in *Hoffman* does not support the conclusion that it was error to refuse it here, even though the additional instruction which was given in *Hoffman* was also given here. At best, *Hoffman* would support the proposition that the trial court would not have committed reversible error if it had allowed the tendered instruction. So the trial court did not err in refusing the tendered instruction. *Mullins, supra; Ernst, supra.*

ISSUE TWO—Were the jury's verdicts contrary to law?

PARTIES' CONTENTIONS—Challenger claims the jury's verdicts were contrary to law because evidence at trial demonstrated the wrecker had been substantially changed and that it was misused. The Appellees reply that the issues of modification and misuse were presented to the jury and the jury rejected Challenger's claims.

CONCLUSION—The jury's verdicts were not contrary to law.

■ We cannot accept Challenger's assertion that the jury's verdicts were contrary to law because it had established that Culbertson had unforeseeably modified the wrecker body and because it established the accident was proximately caused by Lough's misuse of the wrecker body.

■ In appealing a negative judgment as being contrary to law, Challenger climbs a high mountain. We will reverse a negative verdict, as being contrary to law, only when the evidence is without conflict and leads inescapably to but one conclusion and the trier of fact has reached a contrary one. *Hebel v. Conrail, Inc.* (1985), Ind., 475 N.E.2d 652; *Rensing v. Indiana State Univ. Bd. of Trustees* (1983), Ind., 444 N.E.2d 1170.

Because the record contains conflicting evidence as to the issues of modification and misuse, we must conclude that Challenger has failed to reach the summit.

Challenger first claims that it established Culbertson had modified the wrecker body assembly by substituting a smaller tow chain than had been originally issued with the wrecker body, and that the accident was caused when the smaller chain broke. The record, however, reveals that Challenger's distributor testified that the smaller chains were the standard chains issued by Challenger. *Record* at 550. Culbertson testified that the smaller chain, which broke during the accident, was a chain that had been supplied by Challenger. *Record* at 723.

Further, the jury heard expert testimony that the breaking of the chain was a result, and not a cause, of the accident. The expert testified that the weight of the armored car over-balanced the wrecker, causing the driver to lose control, which caused the accident to occur and the chain to break. *Record* at 759–60, 803, 807.

Challenger next contends that the accident was caused by Lough's misuse of the wrecker body. Specifically, Challenger says that a wood block, known as a "cribbing block," should have been used to prevent the bumper of the armored car from resting on the tow chains, and that, because of the absence of a cribbing block, a tow chain broke, causing the accident.

At trial, Culbertson testified that cribbing blocks were only used to prevent damage to vehicle's bumpers or grills, and that it was not unsafe for a vehicle's bumper to rest on the towing chains. *Record* at 726–27, 734–35.

Because the jury heard conflicting evidence as to whether there was actually a modification or misuse of the wrecker body, and because the jury heard evidence that any modification or misuse did not cause the accident, its verdicts were not contrary to law.

ISSUE THREE—Did the trial court err when it gave two instructions to the jury?

PARTIES' CONTENTIONS—Challenger asserts that one of the Appellees' instructions was irrelevant and contends that another instruction contained an improper measure of damages. The Appellees retort that the instruction was relevant and that the other instruction contained proper elements of damages.

CONCLUSION—The trial court did not err when it instructed the jury.

Challenger points to two jury instructions as being in error. The first instruction of which Challenger complains provided:

"At the time of the incident in question, plaintiff, Dennis Lough, was an employee of the plaintiff, Walter T. Culbertson, d/b/a Indiana's Finest Wrecker Service and was acting within the scope of his employment. Accordingly, the acts of Dennis Lough, are deemed as a matter of law, to be acts of his employer because

of the relationship between the parties as employer and employee.

On the contrary, independent acts or omissions on the part of the employer are not imputed to their employee, Dennis Lough since the independent acts or omissions of a principal or employer are not imputed as a matter of law, to an agent or employee."

*Record* at 308.

■ Challenger objected to the instruction on the basis that it was irrelevant. However, the instruction was clearly relevant in relation to Challenger's claims of misuse and incurred risk. The instruction correctly informs the jury that any misuse on the part of Lough was imputed to Culbertson and, therefore, if the jury had accepted Challenger's claim of misuse, that misuse would bar Culbertson's claim as well as Lough's. Further, as Challenger claimed that Lough had incurred the risk of operating the wrecker when it was overloaded, the instruction also imputes Lough's incurred risk to Culbertson, again barring his claim. Again we cannot agree with Challenger's contention that the tendered instruction was irrelevant.

■ The second instruction Challenger claims was erroneous provided:

"If you find in favor of the Estate of John Boundy, II, then you are to assess damages against the defendants and in favor of the Estate 'in such an amount as (you may determine), including but not limited to, reasonable medical, hospital, funeral, and burial expenses and loss of earnings of such deceased person resulting from said wrongful act or omission.' For determining the amount of your judgment, you may also consider the loss of love and affection, *companionship*, and parental guidance suffered by the widow and children of John Boundy, II as a result of his death.

Under Indiana law, an action for wrongful death must be brought in the name of the personal representative of the estate of the deceased. However, after payment of reasonable medical, hospital, funeral, and burial expenses, the remainder of damages, if any, inure to the exclusive

benefit of the widow and the dependent children of the deceased."

*Record* at 313 (emphasis supplied).

Challenger complains that this instruction is erroneous because it includes the term "companionship." Challenger cites the supreme court's decision in *Bd. of Comm'rs of Howard County v. Legg* (1884), 93 Ind. 523, in support of its contention. In *Legg*, the supreme court concluded that, in a wrongful death action, a wife was not entitled to compensation for the loss of the companionship of her husband because, under the wrongful death statute, damages were to be pecuniary and not as a solatium, or for wounded feelings.

Challenger takes a distorted view of *Legg*. The supreme court, long ago, recognized that, in a wrongful death action, the survivor may recover for the loss of care, love and affection, and the training and guidance of the deceased. *American Car Loading Corp. v. Gary Trust & Savings Bank* (1940), 216 Ind. 649, 25 N.E.2d 777; *Dunkelbarger Const. Co. v. Watts* (1986), Ind.App., 488 N.E.2d 355.

To the extent that "companionship" refers to a type of love, care and affection, the loss of "companionship" can be recovered in a wrongful death action. To the extent that "companionship" refers to solatium, or recompense for grief or wounded feelings, it is still an inappropriate measure of damages. *Legg, supra; Commercial Club v. Hilliker* (1898), 20 Ind.App. 239, 50 N.E. 578.

There is, however, no special significance to the term "companionship" apart from its context. When instructing a jury, the trial court is not formulating mystical incantations which must follow word-for-word previous articulations of the law. Even the supreme court in *Legg* recognized that not every instruction which included the term "companionship" was erroneous. The court distinguished a Pennsylvania case which allowed an instruction containing the term "companionship" on the basis that it was clear from the instruction that damages were given not as a solatium but that "companionship" was used to express the

relation of the deceased in the character of the service she performed. *Legg, supra* at 532–33.

The language of *Legg* was:

"If we could say, as was said in the Pennsylvania case, that the clause referring to the wife's loss of her husband's companionship meant and was used simply to express 'the relation of the deceased in the character of the service' he performed, then, possibly, we might be able to sustain the instruction...."

*Id.* at 533.

A fair reading of the second instruction is that the term "companionship" does not relate to solatium, but instead refers to the form of love, care and affection expressed by the relationship of the deceased in the character of the services he performed for his wife. The trial court did not err in instructing the jury.

Judgment affirmed.

SHIELDS, P.J., and CONOVER, J., concur.