Derric PATTON, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–0502–CR–105.

Court of Appeals of Indiana.

Nov. 22, 2005.

Katherine A. Cornelius, Marion County Public Defender Agency, Indianapolis, for Appellant.

Steve Carter, Attorney General of Indiana, Justin Roebel, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

MAY, Judge.

Derric Patton appeals his convictions after a jury trial of two counts of criminal recklessness as Class C felonies[1] and the sentences imposed pursuant to the convictions. He raises four issues, which we restate as:

1. Whether the trial court improperly failed to instruct the jury that self-defense does not require retreat;

2. Whether Patton was subjected to double jeopardy;

3. Whether the trial court improperly imposed consecutive sentences without requiring the State to prove to a jury there were aggravating circumstances; and

4. Whether the trial court improperly imposed consecutive sentences on the ground Patton's offense was a single incident.

We affirm.[2]

### FACTS AND PROCEDURAL HISTORY

At about 10:30 p.m. on January 16, 2004, Patton was a passenger in a car driven by Anthony Blades. They approached a car driven by John Matthews in the parking lot of a skating rink on the northeast side of Indianapolis. Matthews heard Patton say something but he could not understand what Patton was saying. Patton then began shooting at the Matthews vehicle. Matthews, who also had a gun, fired back at Patton and then left the parking lot. Matthews was shot in the back and a passenger in his car, Travis Johnson, was shot twice in the head.

Patton was charged with two counts of criminal recklessness and with carrying a handgun without a license. The State dismissed the carrying charge and a jury found Patton guilty of both counts of criminal recklessness.

---

1. Ind.Code § 35–42–2–2.

2. We heard oral argument on October 13, 2005 at Martinsville High School. We thank the school for its hospitality and commend counsel for the quality of their advocacy.

## DISCUSSION AND DECISION

1. *The Jury Instruction on Self-Defense*

Patton argues the court improperly declined to instruct the jury that a person has no duty to retreat before defending himself. This, he says, "denied Mr. Patton the theory of his defense." (Br. of Appellant at 8.) This language was not included in the self-defense instruction Patton offered and Patton did not object at trial on that ground.

 The manner of instructing a jury is left to the sound discretion of the trial court. *Henderson v. State*, 795 N.E.2d 473, 477 (Ind.Ct.App.2003), *reh'g denied*, *trans. denied* 812 N.E.2d 790 (Ind.2004). Its ruling will not be reversed unless the instructional error is such that the charge to the jury misstates the law or otherwise misleads the jury. *Id.* Jury instructions must be considered as a whole and in reference to each other. *Id.*

 In reviewing a trial court's decision to give or refuse a tendered instruction, we consider: (1) whether the instruction correctly states the law; (2) whether there is evidence in the record to support the giving of the instruction; and (3) whether the substance of the tendered instruction is covered by other instructions that are given. *Id.* Before a defendant is entitled to a reversal, he must affirmatively show the instructional error prejudiced his substantial rights. *Howard v. State*, 816 N.E.2d 948, 962 (Ind.Ct.App.2004), *reh'g denied*.

 Patton objected to the challenged instruction, but he waived this allegation of error on appeal because his trial objection was on grounds different from those he now asserts. A defendant may not argue one ground for objection at trial and then raise new grounds on appeal. *Gill v.*

*State*, 730 N.E.2d 709, 711 (Ind.2000). Nor may a defendant appeal the giving of an instruction on grounds not distinctly presented at trial. Ind. Trial Rule 51(C); *Helsley v. State*, 809 N.E.2d 292, 302 (Ind. 2004). Appellate review of a claim of error in the giving of a jury instruction requires a timely trial objection clearly identifying both the claimed objectionable matter and the grounds for the objection. *Id.* A defendant must identify specific grounds in support of an objection to an incorrect jury instruction, particularly where the trial court focuses its attention on the language of a misleading or incomplete proposed instruction. *Id.*

The jury was instructed on self-defense. Instruction 28(A) was:

The defense of self-defense is defined by law as follows:

A person is justified in using reasonable force against another person to protect himself or a third person from what he reasonably believes to be the imminent use of unlawful force. However, a person is justified in using deadly force only if he reasonably believes that the force is necessary to prevent serious bodily injury to himself or a third person or to prevent the commission of a forcible felony. No person in this State shall be placed in legal jeopardy of any kind whatsoever for protecting himself or his family by reasonable means necessary.

A person is not justified in using force if

1) he is committing, or is escaping after the commission of, a crime,

2) the person provokes unlawful action by another with intent to cause bodily injury to the other person; or

3) the person has entered into combat with another person or is the initial aggressor unless the person withdraws from the encounter and communicates to

the other person the intent to do so and the other person nevertheless continues or threatens to continue unlawful action. (App. at 75.)

Instruction 28(B) was:

> To prevail on a claim of self-defense the defendant must show (1) that he was in a place that he had a right to be; (2) that he acted without fault; (3) and that he had reasonable fear or apprehension of death or great bodily harm.
>
> The State has the burden of disproving the defense of self-defense beyond a reasonable doubt. The State may do so by rebutting the defense directly, by affirmatively showing the defendant did not act in self-defense, or by simply relying upon the sufficiency of its evidence in chief.

(*Id.* at 76.)

Patton first objected that subsection (3) of Instruction 28(A) was confusing to the jury because there had been no evidence "anyone's communicated to the other side that they—that they have withdrawn from the encounter or intend to do so." (Tr. at 596.) After some discussion, Patton withdrew that objection. He then objected to a different part of the instruction on the ground it was redundant. Patton therefore waived this allegation of error by failing to offer at trial specific grounds in support of his objection to the jury instruction.

■ Patton also failed to preserve this allegation of error because he did not request the instruction he now asserts should have been given. A failure to instruct is not subject to appellate review unless a proper request has been made, and error cannot be addressed to a correct but incomplete instruction, if instructions have not been requested on the omitted points.[3] *French v. State*, 273 Ind. 251, 256, 403 N.E.2d 821, 824 (1980).

**3.** We acknowledge those decisions holding this general rule does not apply to a self-defense instruction about the obligation to retreat. Of those courts that have addressed whether or when it is error to fail to instruct the jury on the absence of a duty to retreat, even when no such instruction is specifically requested, some have found the court must so instruct the jury *sua sponte* when the evidence supports such an instruction.

For example, in *Jackson v. State*, 237 Ga. App. 746, 516 S.E.2d 792 (1999), there was evidence Jackson had a confrontation forced on him, was not at fault in continuing the confrontation, and could reasonably have believed the victim was going to assault him. The court noted the issue of retreat was raised by the prosecutor on cross-examination of Jackson, who was asked "Did it ever occur to you that all you had to do was run away from an unarmed man?" *Id.* at 793. The prosecutor again implied in closing argument Jackson had a duty to retreat.

The court concluded Jackson was entitled to an instruction on the issue of lack of duty to retreat even though he did not request it:

> In those circumstances where the omission is clearly harmful as a matter of law in that it fails to provide the jury with the proper guidelines for determining guilt or innocence, this Court will consider and review the charge even though there was no timely objection in the trial court ... the evidence was not overwhelming and Jackson's only defense was self-defense. The State countered this by claiming Jackson should have run away. Failure to charge the jury on lack of duty to retreat was clearly harmful and erroneous as a matter of law.

*Id.* at 794.

By contrast, in *People v. Szymarek*, 57 Mich. App. 354, 225 N.W.2d 765 (1975), the court found no error in failure to instruct as to the "no retreat" rule. At trial, Szymarek indicated he was satisfied with the instructions: "Therefore, absent a miscarriage of justice, this Court should not set aside a jury verdict on the basis of error in the instructions." *Id.* at 766. The court further noted the facts did not entitle Szymarek to such an instruction. In Michigan, the "no retreat" rule applies to defendants who are in their own dwelling at the time of the assault. The *Szymarek* court held if the evidence indicates the defendant was in his dwelling, the trial court is obliged

█ Notwithstanding the waiver, any instructional error was harmless. Patton's defense at trial was that he was defending himself in a situation where he was confronted with deadly force. Patton asserts nothing in the jury instructions explained the jury's obligation to determine who was the initial aggressor; therefore, he appears to argue, the verdict was not trustworthy. He asserts it is not certain the jury "adequately understood the law as it applied to the situation" (Br. of Appellant at 12) because nothing in the jury instructions explained its obligation to determine who was the initial aggressor, and the jury was not instructed that a person confronted with deadly force is not obliged to retreat.

Patton relies in part on *French*, where our Supreme Court stated "where the evidence is in conflict upon the question of who was the aggressor, fairness seems to demand that it be balanced with an advisement that one who is not the aggressor is not required to retreat." 273 Ind. at 256–57, 403 N.E.2d at 825. The problem was compounded by the State's closing argument, Patton says, as the argument emphasized the jury should consider only what Patton did, and not what the people in the other car might have done. He notes "[w]hen self defense is raised ... the other actors to the dispute, while not on trial, are subject to scrutiny for their own actions." (Br. of Appellant at 12.) The four witnesses disagreed on whether Patton was the aggressor. Three testified he shot first, and one testified the first gunshots came from Matthews' vehicle.

█ While we acknowledge the witnesses' disagreement on whether Patton was the aggressor, we find any instruction-al error was harmless. Errors in the giving or refusing of instructions are harmless where a conviction is clearly sustained by the evidence and the instruction would not likely have impacted the jury's verdict. *Randolph v. State*, 802 N.E.2d 1008, 1013 (Ind.Ct.App.2004). An instructional error will result in reversal when we cannot say with complete confidence that a reasonable jury would have rendered a guilty verdict had the instruction been given. *Id.* In *Randolph*, we noted three eyewitnesses testified Randolph fired multiple shots at his victim, and that firing multiple shots undercuts a claim of self-defense. *Id.* at 1015. We determined there was overwhelming evidence before the jury that Randolph's claim of self-defense was without merit. *Id.* In the case before us, three of the four witnesses testified Patton shot first, and the jury apparently believed that testimony. Twenty-three of the thirty-two bullet casings recovered from the scene were linked to the gun Patton was using, and seven more were linked to the gun later found in the residence of Blades' girlfriend. In light of that evidence, we cannot say an instruction that Patton had no duty to retreat would have impacted the jury's verdict.

### 2. Double Jeopardy

█ Ind. Const. Art. 1 § 14 provides "No person shall be put in jeopardy twice for the same offense." Two or more offenses are the "same offense" in violation of the Indiana Constitution, where, with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another

to *sua sponte* instruct the jury with respect to the no retreat rule. *Id.*

In light of Patton's failure to offer an instruction and the substantial evidence Patton

was the aggressor, we cannot characterize the outcome of Patton's case as a "miscarriage of justice" that would permit us to set aside the jury's verdict.

challenged offense. *Richardson v. State,* 717 N.E.2d 32, 49–50 (Ind.1999).

 Under the "actual evidence" test, we examine the actual evidence presented at trial to determine whether each challenged offense was established by separate and distinct facts. *Id.* at 53. To prove a double jeopardy violation under the "actual evidence" test, "a defendant must demonstrate a reasonable possibility that the evidentiary facts used by the factfinder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense." *Id.* The "reasonable possibility" standard permits convictions of multiple offenses committed as part of a protracted criminal episode provided the case is prosecuted in a manner that insures the same evidence is not used to support multiple verdicts. *Id.* at 53 n. 46.

Patton was charged with and convicted of two counts of criminal recklessness as Class C felonies. He asserts he was subjected to double jeopardy because all the charges arose out of "one incident of shooting at a car with three occupants." (Br. of Appellant at 14.)

Criminal recklessness is a Class B misdemeanor, but is a Class C felony if it is committed by shooting a firearm from a vehicle into an inhabited dwelling or other building or place where people are likely to gather. Ind.Code § 35–42–2–2(c)(3). This provision, both parties agree, was directed at "drive-by" shootings. Patton argues "Because the crime occurs as a felony only when it is addressed toward a group of people or to a place where groups of people congregate or could be, sentencing Mr. Patton on two separate counts violates

double jeopardy because he has received two sentences for one crime." (Br. of Appellant at 18.) Thus, he asserts, "shooting at the red car was only one crime." (*Id.*)

However, Patton was not charged under this statutory provision. Rather, he was charged under Ind.Code § 35–42–2–2(d), which provides that criminal recklessness is a Class C felony when a person who recklessly, knowingly, or intentionally inflicts serious bodily injury on another person does so by means of a deadly weapon.

Patton's charging information does not allege he shot into a building or place where people are likely to gather. Rather, Count I alleges Patton, by means of a deadly weapon, inflicted serious bodily injury on Johnson, and Count II alleges he inflicted serious injuries on Matthews, also by means of a deadly weapon. Patton's Class C felony charges therefore were not premised, as Patton asserts, on "an entire event and to risks of groups of people, not to individuals." (Br. of Appellant at 17.) Patton was not subjected to double jeopardy.

### 3. *Sentencing*

Patton was sentenced to the presumptive sentence of four years[4] on each Class C felony charge. One year of each sentence was suspended but the sentences were ordered served consecutively.

#### A. *Aggravating Circumstances*

 Patton asserts the trial court erred in imposing consecutive sentences "as it violates Mr. Patton's right to confrontation and the dictates of [*Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), *reh'g denied* 542

4. Ind.Code § 35–50–2–6 states in pertinent part: "A person who commits a Class C felony shall be imprisoned for a fixed term of four (4) years, with not more than four (4) years added for aggravating circumstances or not more than two (2) years subtracted for mitigating circumstances."

U.S. 961, 125 S.Ct. 21, 159 L.Ed.2d 851 (2004) ]." (Br. of Appellant at 19.) [5]

 Patton acknowledges our Supreme Court's statement in *Smylie v. State*, 823 N.E.2d 679 (Ind.2005), *petition for cert. filed*, that *Blakely* does not apply to the issue of consecutive sentences:

> When sentencing a defendant on multiple counts, an Indiana trial judge may impose a consecutive sentence if he or she finds at least one aggravator.... Certainly, where a judge finds that aggravating and mitigating circumstances are in equipoise, we have required concurrent sentences, just as we have where the court has not found any aggravating circumstances at all. But our statutes do not erect any target or presumption concerning concurrent or consecutive sentences. Where the criminal law leaves sentencing to the unguided discretion of the judge there is no judicial impingement upon the traditional role of the jury.
>
> We find no language in *Blakely* or in Indiana's sentencing statutes that requires or even favors concurrent sentencing. The trial court's sentencing of Smylie to consecutive terms after finding an aggravating circumstance did not increase the sentence above the statutory maximum for each offense. There is no constitutional problem with consecutive sentencing so long as the trial court does not exceed the combined statutory maximums.

823 N.E.2d at 686 (internal citations and quotations omitted).

 Patton asserts the "only aggravating circumstance mentioned at sentencing was that there were two victims in this case." (Br. of Appellant at 20.) [6] This, he asserts, was an invalid circumstance because the crime of criminal recklessness as a Class C felony "is against the place, not against individuals," (*id.*), and there was only one shooting directed toward a "place." As explained above, Patton was not charged under the subsection of the criminal recklessness statute that addresses shooting in the direction of a building or place where people are likely to gather. Rather, he was charged under the subsection that prohibits the reckless, knowing, or intentional infliction of serious bodily injury on another person by means of a deadly weapon. We accordingly hold this aggravator could properly serve as a basis for imposing Patton's consecutive sentences.

**B.** *The Offense as a Single Incident*

In much of Patton's argument captioned "The trial court erred in ordering *consecutive sentences* because the events were all one criminal activity," (Br. of Appellant at 14) (emphasis supplied), Patton appears in

---

5. Patton offers no argument to the effect his right to confrontation was violated. In *Blakely*, the Supreme Court held the Sixth Amendment requires a jury to determine beyond a reasonable doubt the existence of aggravating factors used to increase a sentence above the presumptive sentence assigned by the legislature. 542 U.S. at 301, 124 S.Ct. at 2536. In *Smylie v. State*, 823 N.E.2d 679, 686 (Ind. 2005), *petition for cert. filed*, our supreme court held *Blakely* applies to Indiana's sentencing scheme, and thus requires "the sort of facts envisioned by *Blakely* as necessitating a jury finding must be found by a jury under Indiana's existing sentencing laws."

6. It appears the trial court recognized additional aggravators, even though it may not have explicitly described them as such. It noted there were over one hundred other people in the parking lot where the shooting took place; and the weapon used was an AK–47 type weapon that is "not for hunting. It's not for sport. It's to kill people." (Tr. at 717). The court told Patton the "enormous fire powers that were in your vehicles that night is unbelievable." (*Id.*)

fact to be arguing not that the *sentences* were improper but rather that as a matter of common law a single criminal incident may not result in multiple *charges*. *See, e.g., Armstead v. State,* 549 N.E.2d 400, 401 (Ind.Ct.App.1990).[7]

Armstead argued he could not be held liable for more than one count of resisting law enforcement when the charges stemmed from a single event, and we agreed. We reasoned the offense of resisting law enforcement did not involve crimes against the person but instead was directed at "interferences with governmental operations constituting offenses against public administration":

> A person who violates Ind.Code § 35–44–3–3 harms the peace and dignity of the State of Indiana and its law enforcement authority. The harm caused by one incident is the same regardless of the number of police officers resisted. It is the act of resisting duly constituted authority which the statute prohibits, not resisting individual representatives of that authority.

*Id.*

As explained above, this argument appears to be based on the erroneous premise Patton was charged and convicted under the "drive-by" shooting provision of the criminal recklessness statute, when in fact he was charged under the subsection prohibiting the reckless, knowing, or intentional infliction of serious bodily injury on another person by means of a deadly weapon. We accordingly cannot say it was error to charge Patton with multiple counts of criminal recklessness.

## CONCLUSION

Patton waived his allegation that the jury was not properly instructed by his failure to offer specific grounds in support of his objection to the jury instructions that were given or to offer the instruction he now asserts should have been given. Patton was not subjected to double jeopardy or improperly sentenced, as he was charged with and convicted of recklessly, knowingly, or intentionally inflicting serious bodily injury on two persons by means of a deadly weapon, and not shooting a firearm from a vehicle into an inhabited dwelling or other building or place where people are likely to gather. We accordingly affirm his convictions and sentence.

Affirmed.

RILEY, J., and NAJAM, J., concur.

---

7. Patton presents an independent argument that even if the State could have charged a separate count for each victim, he was improperly sentenced to consecutive terms because the shootings were only one incident of criminal activity.

Even if both of Patton's charged crimes occurred during a single episode of criminal conduct, his sentence was proper. Under Ind.Code § 35–50–1–2(c),

> except for crimes of violence, the total of the consecutive terms of imprisonment, exclusive of terms of imprisonment under IC 35–50–2–8 and IC 35–50–2–10, to which the defendant is sentenced for felony convictions arising out of an episode of criminal conduct shall not exceed the presumptive sentence for a felony which is one (1) class of felony higher than the most serious of the felonies for which the person has been convicted.

Patton's charged crimes were not "crimes of violence" for purposes of this section.

Patton was convicted of Class C felonies and the presumptive sentence for the next higher class of felony is ten years. Ind.Code § 35–50–2–5. Therefore, even if Patton's two offenses were part of a single episode of criminal conduct, his consecutive terms totaled eight years. As Ind.Code § 35–50–1–2 would permit consecutive terms totaling as much as ten years, Patton's total consecutive sentence of eight years was not error.