## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 08 2020, 8:48 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Cynthia Carter
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Sierra A. Murray
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Krisean Porter,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff,*

December 8, 2020

Court of Appeals Case No.
19A-CR-2777

Appeal from the Marion Superior Court

The Honorable Shatrese M. Flowers, Judge

Trial Court Cause No.
49G02-1806-F3-17965

**Robb, Judge.**

# Case Summary and Issues

[1] Following a jury trial, Krisean Porter was convicted of promotion of human trafficking, a Level 3 felony, and sexual misconduct with a minor, a Level 4 felony. Porter was sentenced to an aggregate of fifteen years in the Indiana Department of Correction with three years suspended. Porter now appeals raising multiple issues which we restate as: (1) whether the trial court erred by denying Porter's proposed jury instruction; and (2) whether the trial court erred in admitting certain evidence over Porter's objection.[1] Concluding the trial court did not err in instructing the jury or in the admission of evidence, we affirm.

# Facts and Procedural History

[2] In June of 2017, S.M. was fourteen years old and living at the Lutherwood Children's Home. On June 2, S.M. found out that she was going to be placed in a group home and decided to run away and stay at a friend's house. That same day, S.M. placed an ad on Backpage offering herself for prostitution and S.M.'s

---

[1]Porter also raises a sufficiency of evidence claim with regard to charges of promoting prostitution, alleging that the State failed to prove beyond a reasonable doubt that S.M. became a prostitute because of Porter. A conviction under Indiana Code section 35-45-4-4(b)(1) requires proof that a person "knowingly or intentionally" entices or compels "another person to become a prostitute or juvenile prostitution victim." Porter argues that the State failed to present sufficient evidence to convict him under Indiana Code section 35-45-4-4 because S.M. became a prostitute prior to meeting Porter. Our supreme court has rejected this argument. *See Nation v. State*, 445 N.E.2d 565, 569-70 (Ind. 1983). Further, although the jury found Porter guilty of two counts of promoting prostitution, the trial court vacated both counts of promoting prostitution and did not enter judgment of conviction on those counts, so we need not address the issue.

friend introduced her to Porter. Porter picked S.M. up that night and S.M. began staying with him.

[3]     S.M. continued to post prostitution ads on Backpage with Porter. S.M. testified that Porter was posting ads "every few hours" and that she began making "[c]ar plays and in calls at hotels." Transcript of Evidence, Volume II at 136. Porter began paying for hotels where S.M. made these "plays," he set the prices for the sex acts performed by S.M., and he kept all the money. In addition to Backpage ads, Porter was also setting up "plays" with people he knew personally.

[4]     After running away, S.M. lived primarily with Porter; however, S.M. and Porter were separated for a little over a week following an altercation. During this time, S.M. continued to engage in prostitution. S.M. then returned to live with Porter. While S.M. was living with Porter, he engaged in intercourse with her frequently. And while with Porter, S.M. used cocaine, methamphetamine, marijuana, alcohol, and Xanax.

[5]     On July 11, 2017, Detective Brandon Davenport of the Indiana State Police set up a meeting with S.M. through Backpage for a car play. Detective Davenport had been investigating the potential sex trafficking of a different minor whom he believed at the time to be S.M. based on her Backpage ad. Detective Davenport picked up S.M. from Porter's residence. Detective Davenport then realized that S.M. was not the minor he had been investigating; however, he still took S.M. into custody.

[6] Detective Davenport questioned S.M. that night. S.M. told Detective Davenport that she had been living with Porter and implicated him in posting Backpage ads for her, booking hotels, and handling all the money from her prostitution. *See* Appendix of Appellant, Volume 2 at 25-26. Following the interview, S.M. was taken into custody and Detective Davenport and other investigators from the Indiana State Police returned to the home where Detective Davenport had picked S.M. up. They spoke to Porter's roommate Kevin Smith who gave consent to search the home. Porter was not home; however, they did find a clip board with the name "Porter" written across the back which contained loose papers. Written on the papers were what Detective Davenport described as rules for a trafficked victim to follow as well as written out ads. App. of Appellant, Vol. 2 at 26; *see also* Tr., Vol. III at 97.

[7] On June 5, 2018, supported by a probable cause affidavit completed by Detective Davenport, the court issued a warrant for Porter's arrest. Porter was arrested the same day and the State charged him with promotion of human trafficking, a Level 3 felony; promoting prostitution, a Level 4 felony; sexual misconduct with a minor, a Level 4 felony; promoting prostitution, a Level 5 felony; and corrupt business influence, a Level 5 felony.

[8] During the trial, the State sought to admit Exhibits 27A, 27B, and 27C. These exhibits were electronic messages that the Indiana State Police had pulled from Porter's phone containing conversations between Porter and three other

individuals.[2] Porter objected to admitting the incoming messages on hearsay grounds. *See* Tr., Vol. III at 72. The trial court admitted the exhibits over objection. *See id.* at 82. However, the trial court did instruct the jury as follows:

> Ladies and Gentlemen of the Jury, you all have just reviewed State's Exhibits 27-A, 27-B and 27-C that contained accusations in those documents by a third party. The accusations of the third party are admissible, not as evidence of their truth, but only for the limited purposes of enabling you to determine if the accused, by his conduct upon receiving them, had, in fact, admitted guilt.

*Id.* at 96, 124 (re-reading the limiting instruction).

[9] Following the conclusion of the State's case, Porter moved for judgment on the evidence on the charge of promoting prostitution as a Level 4 felony, arguing that the uncontested evidence showed that S.M. became a prostitute before meeting Porter. The trial court denied Porter's motion.

[10] Porter tendered Proposed Jury Instruction 6 which stated the following:

> A person engages in conduct "knowingly" if, when he engages in the conduct, he is aware of a high probability that he is doing so.
>
> When a kind of culpability is required for commission of an offense, it is required with respect to every material element of the prohibited conduct.

---

[2] The exhibits contain text message conversations between Porter and individuals identified only as "Draino" and "My Sweet" and one Facebook messenger conversation between Porter and Baron Andrews.

I.C. 35-41-2-2.

App. of Appellant, Vol. 2 at 124. The trial court denied this instruction over Porter's objection. *See* Tr., Vol. III at 158.

[11] The jury found Porter guilty of promotion of human trafficking of a minor, two counts of promoting prostitution, and sexual misconduct with a minor. Porter was found not guilty of corrupt business influence. The trial court subsequently vacated both convictions for promoting prostitution due to double jeopardy concerns and entered judgment of conviction on the remaining counts. Porter now appeals.

# Discussion and Decision

## I. Proposed Jury Instruction

[12] Porter argues that the trial court erred by denying his Proposed Instruction 6. When we review a trial court's decision to give or refuse a party's tendered instruction, we consider whether: 1) the tendered instruction correctly states the law; 2) the evidence in the record supports giving the instruction, and 3) the substance of the instruction is covered by other instructions. *Kane v. State*, 976 N.E.2d 1228, 1230-31 (Ind. 2012). The trial court has broad discretion in instructing the jury, and as a result, we review the trial court's decision to give or refuse a party's tendered instruction for an abuse of discretion. *Id.* at 1231. When reviewing the jury instructions, we consider them as a whole and in

reference to each other. *Patton v. State*, 837 N.E.2d 576, 579 (Ind. Ct. App. 2005).

[13] Further, any error in instructing the jury is subject to a harmless error analysis. *Dixson v. State*, 22 N.E.3d 836, 840 (Ind. Ct. App. 2014)*, trans. denied.* An error is to be disregarded as harmless unless it affects the substantial rights of a party. *Oatts v. State,* 899 N.E.2d 714, 727 (Ind. Ct. App. 2009); Ind. Trial Rule 61. And "[e]rrors in the giving or refusing of instructions are harmless where a conviction is clearly sustained by the evidence and the jury could not properly have found otherwise." *Dill v. State,* 741 N.E.2d 1230, 1233 (Ind. 2001).

[14] Porter's Proposed Jury Instruction 6 stated, in relevant part: "When a kind of culpability is required for commission of an offense, it is required with respect to every material element of the prohibited conduct. I.C. 35-41-2-2." App. of Appellant, Vol. 2 at 124. Both Porter and the State argue that this instruction is significant because it could dictate the jury's interpretation of Porter's promotion of human trafficking of a minor charge. Under Indiana Code section 35-42-3.5-1[3]:

> (b) A person who *knowingly or intentionally* recruits, harbors, or transports a child less than:
>
> (1) eighteen (18) years of age with the *intent* of:

---

[3] Currently Indiana Code section 35-42-3.5-1.2.

\* \* \*

> (B) inducing or causing the child to:
>
> > (i) engage in prostitution or juvenile prostitution[]
>
> commits promotion of human trafficking of a minor, a Level 3 felony.

Ind. Code § 35-42-3.5-1(b)(1) (2017) (emphasis added).

[15] Porter argues that the word "intent" in Indiana Code section 35-42-3.5-1(b)(1) is merely a place holder for culpability. Reply Brief at 5. Porter states that not only must a person "knowingly or intentionally recruit[], entice, harbor, or transport a child less than eighteen" but they must also "knowingly and intentionally" cause the child to engage in prostitution. *Id.* Porter argues that his Proposed Jury Instruction 6 would have instructed the jury to apply the "knowingly or intentionally" culpability to the entire statute. Further, Porter argues that the second portion of Proposed Jury Instruction 6 comes directly from Indiana Code section 35-41-2-2(d); however, he fails to acknowledge that his proposed instruction omits the beginning of the sentence. The full subsection states, "*Unless the statute defining the offense provides otherwise*, if a kind of culpability is required for commission of an offense, it is required with respect to every material element of the prohibited conduct." Ind. Code § 35-41-2-2(d) (emphasis added).

[16]  We find Porter's argument unpersuasive and conclude that Porter's Proposed Jury Instruction 6 was an incomplete statement of law because it omitted the qualifying statement of "[u]nless the statute defining the offense provides otherwise." Ind. Code § 35-41-2-2(d); *see Washington v. State,* 997 N.E.2d 342, 350 (Ind. 2013) (holding that an instruction was properly refused because it was "misleadingly incomplete"); *see also Matheny v. State*, 983 N.E.2d 672, 679-80 (Ind. Ct. App. 2013), *trans. denied.*

[17]  This court has held that a tendered jury instruction was incomplete when a "prerequisite was not included in the tendered instruction." *Challenger Wrecker Mfg. Inc. v. Estate of Boundy*, 560 N.E.2d 94, 97 (Ind. Ct. App. 1990). In *Challenger Wrecker*, the following instruction was tendered:

> You are instructed that Challenger Wrecker Manufacturing, Inc. was entitled to assume that the purchaser of the wrecker, [Purchaser] would instruct its employees in the operation and use of the 4800T wrecker.

*Id.* Our supreme court had previously determined that before a manufacturer may assume a purchaser will adequately warn or instruct its employees, the manufacturer must first have given adequate warnings to the purchaser. *See id.* (citing *Hoffman v. E.W. Bliss Co.,* 448 N.E.2d 277, 281 (Ind. 1983)). Thus, we held that the Challenger Wrecker instruction was incomplete because it allowed the jury to "assume" that a purchaser would instruct its employees as to proper use of machinery, whereas the jury must first make a factual determination that adequate warnings were given from the manufacturer. *Id.*

[18]     Similarly, we conclude that Proposed Jury Instruction 6's failure to include the qualifying statement of "[u]nless the statute defining the offense provides otherwise[,]" Ind. Code § 35-41-2-2(d), would improperly lead the jury to require the "knowingly and intentionally" culpability for the entirety of Indiana Code section 35-42-3.5-1(b) (2017).

[19]     However, even if Proposed Jury Instruction 6 did not constitute an incomplete statement of law, the substance of the proposed instruction was covered by other instructions tendered to the jury. *See O'Connell v. State,* 970 N.E.2d 168, 173-74 (Ind. Ct. App. 2012) (holding that "[e]ven if an instruction is a correct statement of the law and finds some support in the evidence, a trial court may in its discretion refuse a tendered instruction if it is covered in substance by other instructions") (footnote omitted). In *O'Connell,* we found that an appellant's tendered instruction regarding voluntariness was not an incorrect statement of law. *Id.* However, we held that the jury was adequately informed when the trial court instructed the jury with regard to the elements of the crime, including the respective *mens rea* requirements; the State's burden of proof; the requirement that all the elements must be proved; and that "[a] person commits an offense only if he voluntarily engages in conduct in violation of the statute defining the offense." *Id.* at 173.

[20]     Here, Final Instruction No. 3 instructed the jury that "the State must prove the Defendant guilty of each element of the crime charged[.]" App. of Appellant, Vol. 2 at 137. The definition of when a person engages in conduct that is "knowing" or "intentional" was given in Final Instruction No. 14. *Id.* at 148.

And Final Instruction No. 6 recites Indiana Code section 35-42-3.5-1(b) and lists each element needed to be proved to find Porter guilty of promotion of human trafficking of a minor. *See id.* at 140. The trial court's final instructions sufficiently covered the substance of Proposed Jury Instruction 6. Thus, we conclude that the trial court properly refused to give the proposed instruction.[4]

## II.  Admission of Evidence

[21]    Porter argues that the trial court erred in admitting Exhibits 27A, 27B and 27C. The trial court has broad discretion in ruling on the admissibility of evidence. *Small v. State*, 632 N.E.2d 779, 782 (Ind. Ct. App. 1994), *trans. denied*. We will disturb its ruling only upon a showing of abuse of that discretion. *Id.* An abuse of discretion may occur if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law. *Baxter v. State*, 734 N.E.2d 642, 645 (Ind. Ct. App. 2000). But even if a trial court abuses its discretion by admitting challenged evidence, we will not reverse the judgment if the admission of evidence constituted harmless error. *Sugg v. State*, 991 N.E.2d 601, 607 (Ind. Ct. App. 2013), *trans. denied*.

---

[4] Even if the trial court did err in refusing Porter's proposed instruction, we have held that errors in the giving or refusing of instructions are harmless where a conviction is clearly sustained by the evidence, and the instruction would not likely have impacted the jury's verdict. *Eberle v. State*, 942 N.E.2d 848, 861 (Ind. Ct. App. 2001), *trans. denied*. The record here reveals that the State presented substantial evidence of Porter's intent and guilt; therefore, Porter's proposed instruction would not have had an impact on the verdict and any error in jury instruction was harmless.

[22] Error in the admission of evidence is harmless if it does not affect the substantial rights of the defendant. *McVey v. State*, 863 N.E.2d 434, 440 (Ind. Ct. App. 2007), *trans. denied*. In determining whether an evidentiary ruling has affected a defendant's substantial rights, we assess the probable impact of the evidence on the factfinder. *Mathis v. State*, 859 N.E.2d 1275, 1280 (Ind. Ct. App. 2007).

[23] Porter contends that incoming messages contained in Exhibits 27A, 27B, and 27C constituted inadmissible hearsay. Hearsay is a statement that "is not made by the declarant while testifying at the trial or hearing . . . and is offered in evidence to prove the truth of the matter asserted." Ind. Evidence Rule 801(c). However, a statement is not hearsay if it is not used to prove the truth of the matter asserted. *Smith v. State*, 721 N.E.2d 213, 216 (Ind. 1999). A statement is offered to prove the truth of the matter asserted when it is introduced to prove an element of the crime charged. *Johnson v. State*, 881 N.E.2d 10, 12 (Ind. Ct. App. 2008), *trans. denied.*

[24] Porter argues that the admitted Facebook and text messages constituted inadmissible hearsay not subject to the adopted admissions doctrine.[5] Indiana

---

[5] During the jury trial, the State offered Exhibits 27A, 27B and 27C and argued that the incoming messages were adoptive admissions and that the whole conversations should be admitted for context. *See* Tr., Vol. III at 72. Porter's argument is premised on the exhibits erroneously being admitted pursuant to this doctrine. The State does not specifically address whether or not the messages contained in the exhibits were adopted admissions in its brief, instead arguing the messages were not hearsay at all. *See* Brief of Appellee 23-26. However, we may affirm a trial court's judgment on any theory supported by the evidence. *Ratliff v. State*, 770 N.E.2d 807, 809 (Ind. 2002).

Rule of Evidence 801(d)(2)(B) provides that when "[a] statement is offered against an opposing party and . . . is one the party manifested that it adopted or believed to be true[,]" the statement is not hearsay. However, this is "[n]otwithstanding Rule 801(c)," meaning the statement must be offered for the truth of the matter asserted to fall within the adopted admission exclusion. Ind. Evidence Rule 801(d); *cf. Jethroe v. State*, 262 Ind. 505, 511, 319 N.E.2d 133, 138 (1974) (stating "[a] conversation was introduced to show the truth of her assertion[;] [n]evertheless, it was admissible, because of the hearsay exception for admissions"). If a statement is not offered for the truth of the matter asserted, it need not rely on a hearsay exclusion under Indiana Rule of Evidence 801(d) to be admissible. We conclude that the incoming messages contained in Exhibits 27A, 27B and 27C were not offered for the truth of the matter asserted.

[25]  "Statements providing context for other admissible statements are not hearsay because they are not offered for their truth." *Williams v. State*, 930 N.E.2d 602, 609 (Ind. Ct. App. 2010) (quoting *United States v. Tolliver,* 454 F.3d 660, 666 (7th Cir. 2006), *cert. denied,* 549 U.S. 1149 (2007)), *trans. denied*. In *Williams,* we stated that a confidential informant's statements recorded during a drug buy were non-hearsay because they merely provided context for the defendant's own statements as well as the lengthy periods of silence that were also recorded. *Id.* Our supreme court has held that an informant's statements in these circumstances are context evidence and that "[i]t was the statements made by

[the defendant] that really constituted the evidentiary weight of the conversation." *Id.* (quoting *Williams v. State*, 669 N.E.2d 956, 958 (Ind. 1996)).

[26] Here, Porter concedes that the outgoing messages from Porter contained in Exhibits 27A, 27B, and 27C were admissible. And while none of the messengers in Exhibits 27A, 27B and 27C are confidential informants, their messages do provide context to Porter's outgoing messages. Throughout the exhibits at issue Porter sends messages implicating that S.M. was involved in prostitution with references to "making plays" and "all pimpin." App. of Appellant, Vol. 3 at 70-73. Other messages from Porter suggest he was aware that she was underage such as "[s]he is at work over here no babysitting[,]" and "I was talking about you being her big sister[.]" *Id.* at 70, 77. The incoming messages provide context to Porter's outgoing statements.

[27] Further, our supreme court has held that when "the jury receive[s] no limiting instruction, the assumption must be that the jury considered the testimony as evidence of the truth of the matters asserted in that testimony." *Jethroe*, 262 Ind. at 511, 319 N.E.2d at 138. However, in this case the trial court gave the jury a limiting instruction regarding the exhibits at issue:

> Ladies and Gentlemen of the Jury, you all have just reviewed State's Exhibits 27-A, 27-B and 27-C that contained accusations in those documents by a third party. The accusations of the third party are admissible, *not as evidence of their truth*, but only for the limited purposes of enabling you to determine if the accused, by his conduct upon receiving them, had, in fact, admitted guilt.

Tr., Vol. III at 96 (emphasis added). The incoming messages in Exhibits 27A, 27B and 27C are not hearsay because they were not offered for the truth of the matter asserted. And because the jury was instructed that they were not admissible "as evidence of their truth" the jury should not have used them improperly. *Id.*; *see Weisheit v. State*, 26 N.E.3d 3, 20 (Ind. 2015) (stating "we presume the jury correctly follow[s] instructions").

[28] Even if 27A, 27B, and 27C were hearsay, such an erroneous admission would not warrant reversal because any alleged error was harmless. *See Hunter v. State*, 72 N.E.3d 928, 932 (Ind. Ct. App. 2017) (noting the "improper admission of evidence is harmless error when the erroneously admitted evidence is merely cumulative of other evidence before the trier of fact"), *trans. denied*. Further, "the improper admission of evidence is harmless error when the conviction is supported by substantial independent evidence of guilt as to satisfy the reviewing court that there is no substantial likelihood that the questioned evidence contributed to the conviction." *Id.* (quoting *Cook v. State*, 734 N.E.2d 563, 569 (Ind. 2000)).

[29] Here, none of the incoming messages present information not already contained in the record. Evidence such as Porter's outgoing messages, S.M.'s testimony, and physical evidence found at Porter's residence by the Indiana State Police was sufficient for a jury to determine that Porter was guilty. Further, to the extent that Porter argues that the messages were the sole evidence that he was aware S.M. was underage they provide no concrete evidence that Porter knew S.M.'s age and do not provide any more insight into

Porter's knowledge regarding S.M.'s age than other evidence presented. The messages merely add to the circumstantial evidence that Porter was aware that S.M. was underage and that he was an active participant in her prostitution. The exhibits at issue were merely cumulative of other evidence and Porter's conviction was supported by substantial independent evidence of guilt as to satisfy us that there is no substantial likelihood that the alleged hearsay evidence contributed to the conviction.

[30] We conclude that Exhibits 27A, 27B, and 27C were not admitted for the truth of the matter asserted and thus are not hearsay. Furthermore, had the statements contained in Exhibits 27A, 27B and 27C been hearsay, we would find no reversible error as the evidence was merely cumulative of other properly admitted evidence.

# Conclusion

[31] We conclude that the trial court did not err in instructing the jury or in its admission of evidence. Therefore, we affirm.

[32] Affirmed.

Crone, J., and Brown, J., concur.